THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY v. LEWIS RHOADES.

No. 12,039.   (68 Pac. 58.)

SYLLABUS BY THE COURT.

1. EVIDENCE—*Requirements of Circumstantial Evidence.*   So to establish a theory by circumstantial evidence that it may be accepted as a fact proved, the known facts relied on as a basis for the theory must be of such nature and so related to one another that the only reasonable conclusion that may be drawn therefrom is the theory sought to be established.

2. ——— *Presumption of Fact Defined—Erroneous Instruction.*   The term, " a presumption of fact," has reference to a fact whose existence is established by that just and reasonable inference which common sense and experience naturally draw from another fact known to exist.   It must have a fixed fact for its

64 553
66 615
e66 617

64 553
74 151

64 553
82 233

foundation. It cannot be based upon a presumption. Hence, an instruction in the following language: "You are further instructed that it is a presumption of fact that when a mechanical appliance fails to do the work that it is intended to do it is defective or out of repair and that when a mechanical appliance is once shown to be defective or out of repair, it is presumed to remain so, unless it is affirmatively shown that it was repaired," is erroneous, because it bases a presumption of fact upon a presumption, and not upon an established fact.

Error from court of appeals, northern department; John H. Mahan, Abijah Wells, and Sam'l W. McElroy, judges. Opinion filed March 8, 1902. Reversed.

*M. A. Low*, and *W. F. Evans*, for plaintiff in error.
*W. G. Bissell*, for defendant in error.

The opinion of the court was delivered by

Pollock, J. : This was an action by Lewis Rhoades against the Chicago, Rock Island & Pacific Railway Company to recover for personal injuries received by him on April 9, 1898, while in the employ of the company, acting in the capacity of "hostler" at Phillipsburg, a division point on defendant's line of railway. It appears from the record that plaintiff had been there engaged as "hostler" or "hostler's helper" for a period of about four years prior to his injury ; that it is the duty of the "hostler" and his helper, when an engine comes in off the road, to receive it from the engineer, run it to the water-tank and coal-chute, load the tender with water and coal, run it to the roundhouse, care for it until the time arrives for use again, and run it out preparatory to starting on the trip ; that the coal-chute at Phillipsburg had originally been constructed when engines of a smaller type and of not so great height were used ; that in more recent years

the height of the engines and tenders has been increased, and by reason thereof it became necessary to sink the track alongside the coal-chute a sufficient depth to permit the apron, from which the coal descends from the pocket in which it is contained to the tender, to conduct the coal down from the chute to the tender ; that the track alongside the coal-chute at Phillipsburg was sunk a depth of about ten inches, leaving an incline from some distance beyond each end of the coal-chute towards its center ; that on the night in question engine No. 897, a large one used in drawing a passenger-train between Phillipsburg and Fairbury, Neb., came in, and plaintiff and his helper ran it to the chute to equip it with coal; that the engine was stopped on the incline opposite pocket No. 2 and the apron was drawn down upon the tender by the helper, but the height of the tender was such that it did not allow the apron to descend to such an angle as automatically to unfasten the door holding the coal in the pocket; that plaintiff started, as he was accustomed to do, to climb up between the cab of the engine and the lowered apron of the chute to unlatch the door holding the coal in the pocket, when, the air-brakes on the engine failing to hold the engine and tender in position, it backed down the incline, catching plaintiff between the cab of the engine and the apron, causing him serious personal injury.

The acts of negligence alleged against defendant by plaintiff consisted of the manner in which the track was lowered, leaving an incline on which it was difficult to hold an engine while being provided with coal ; the defective construction and working of the door and apron on the coal-chute, and the use and loading of an engine of such height that the apron would

not drop sufficiently to cause the unlatching of the door holding the coal automatically, as was intended by its construction, which required plaintiff to climb up and unfasten the door with his hand, as he was doing when injured; and, as further alleged, "in permitting to come to plaintiff's hands for coaling a locomotive-engine and tender whose air-brakes were defective and out of repair, the plaintiff not being informed of said fact, but the defendant having notice thereof."

Upon the trial, the evidence showed complete knowledge on the part of plaintiff of all the defects alleged to exist in the construction of the track and in the construction and operation of the apron and door on the coal-chute, and the size and height of the engine in question, etc., were the only questions of negligence submitted to the jury by the court. Plaintiff had verdict and judgment, which judgment was by the court of appeals affirmed, and from the decision and judgment of affirmance the railway company brings error to this court.

A determination of the questions involved in this controversy demands the consideration of the sufficiency of the evidence found in the record to uphold the verdict rendered and the charge of the court to the jury upon this evidence. The record contains no direct evidence tending to show any defect in the construction or condition of the air-brakes on the engine handled. The ultimate fact that the engine backed down the incline and caused the injury to plaintiff complained of is undisputed. Why the engine backed down is attempted to be shown only by inference. It is assumed that the engine moved because the brakes failed to hold. It is further assumed that the brakes failed to hold because of the leakage of air at the

Railway Co. v. Rhoades.

valves, and that the valves leaked air because of their defective construction or condition. This conclusion is arrived at by deduction, as no witness knew or claimed to know the actual existing facts. The conclusion reached by this deduction is reasonable. It may be the true conclusion, and probably is the correct theory; but is this sufficient? To establish a theory by circumstantial evidence, the known facts relied on as a basis for the theory must be of such nature and so related to one another that the only reasonable conclusion that may be drawn therefrom is the theory sought to be established. (*Asbach v. The Chicago, B. & Q. Ry. Co.*, 74 Iowa, 248, 37 N. W. 182; *Carruthers v. C. R. I. & P. Rly. Co.*, 55 Kan. 600, 40 Pac. 915.)

To entitle the plaintiff to a recovery in this case, it devolves upon him to establish by evidence two facts: (1) A defective condition of the air-brakes on the engine; (2) notice, either actual or constructive, of such defect by the company. This court, in *A. T. & S. F. Rld. Co. v. Wagner*, 33 Kan. 660, 7 Pac. 204, said:

"Where an employee seeks to recover damages for injuries resulting from insufficiency of any of the machinery or instrumentalities furnished by the railroad company, it will not only devolve upon such employee to prove such insufficiency, but it will also devolve upon him to show either that the railroad company had notice of the defects, imperfections or insufficiencies complained of, or that by the exercise of reasonable and ordinary care and diligence it might have obtained such notice."

In seeking to establish these facts plaintiff is met with two presumptions, the force of which he must overcome: (1) That the appliances with which the engine he was handling for the company was equipped were not defective, or, if defective at the time, that the company had no notice of such defect; (2) that

he assumed the usual and ordinary risks incident to his employment. As was said by this court in *A. T. & S. F. Rld. Co. v. Wagner*, supra, quoting with approval from Mr. Wood in his work on Master and Servant:

"The servant seeking to recover for an injury takes the burden upon himself of establishing *negligence on the part of the master* and due care on his own part. And he is met by *two* presumptions, *both* of which he must overcome in order to entitle him to a recovery: First, that the master has discharged his duty to him by providing suitable instrumentalities for the business, and in keeping them in condition; and this involves proof of something more than the mere fact that the injury resulted from a defect in the machinery. It imposes upon him the burden of showing that the *master had notice of the defect*, or that in the exercise of that ordinary care which he is bound to observe he would have known it. When this is established, he is met by another presumption, the force of which must be overcome by him, and that is *that he assumed all the usual and ordinary hazards of his business.*"

The record shows that this engine had been handled continuously for months prior to the date of plaintiff's injury, both by plaintiff himself as "hostler" and by the engineer who ran the engine, and that at all times the air worked satisfactorily; also, that it had been many times inspected and the air found to work perfectly; that it was tested many times immediately after the accident and found in good order. The only direct evidence in the record tending to show an existing defect in the air equipment was that of one Robinson, who worked as "hostler" at Phillipsburg about two months prior to the injury, who testified that on one occasion, between the 1st and 15th days of February, prior to the accident, the air-brakes released. The circumstances under which this occurred and the

conditions existing at the time are not given. It is not shown that notice of this fact was given the company or that any duty devolved upon the "hostler" either to ascertain and remedy existing defects or to notify the company of their existence. On the contrary, it is shown by the evidence of plaintiff that it is not the duty of the "hostler" to make an inspection or examination of the machinery for defects. Hence, it must be held that, even if the release of the brakes which occurred, as testified to by this witness, was the result of a defect in the construction or condition of the air equipment, which is not shown, no actual notice of the existence of such defect is brought home to the company, and the undisputed fact that continuously for a period of two months thereafter the air worked satisfactorily on all occasions rebuts any presumption of constructive notice to the company.

Upon this condition of the evidence the court instructed the jury as follows :

"You are further instructed that it is a presumption of fact that when a mechanical appliance fails to do the work that it is intended to do it is defective or out of repair, and that when a mechanical appliance is once shown to be defective or out of repair it is presumed to remain so, unless it is affirmatively shown that it was repaired."

This was error. This instruction is erroneous as an abstract proposition of law, because it bases one presumption upon another, and a presumption can only be based upon known facts. In *Phila. City Pass. Railway Co. v. Henrice*, 92 Pa. St. 434, 37 Am. Rep. 699, it was said :

"A presumption should always be based upon a fact, and should be a reasonable and natural deduction from such fact. The true rule was correctly stated by Mr. Justice Thompson, in *Douglass v. Mitch-*

*ell's Ex'rs,* 11 Casey, 443 : 'That as proof of a fact the law permits inferences from other facts, but does not allow presumptions of fact from presumptions. A fact ·being established, other facts may be, and often are, ascertained by just inferences. Not so with a mere presumption of fact; no presumption can with safety be drawn from a' presumption; there being no fixed or ascertained fact from which an inference of fact might be drawn, none is drawn.' ''

The instruction is also erroneous as applied to the evidence in this case. No mechanical appliance works perfectly at all times and under all conditions. The master is under no obligation to furnish perfect tools or mechanical appliances to his servant. This would require the impossible. The extent of the master's. duty in this regard is to furnish at all times such tools, mechanical appliances and other instruments of labor as are reasonably safe in design, construction and condition for use in the particular service in which the servant is engaged. Beyond this, there being no duty enjoined by law, no negligence can be imputed. The fact that the best of mechanical appliances that human ingenuity can devise or mortal skill execute will not at all times and under all conditions perform the work for which they are designed does not argue that such mechanical appliances are not reasonably safe and suitable for use by the servant in the work to be performed, or that they are defective in such sense as to render the master guilty of negligence by failure to furnish better, but argues only that, being as they are the product of human effort, they cannot but fail at unforeseen times fully to perform the design of their maker.

For such unforeseen and unapprehended injuries as may result to an employee in the performance of service for his master by reason of the failure of a

Railway Co. v. Scaggs.

mechanical appliance at all times and under all conditions to perform the work for which it was intended, the employer is not liable. Such injuries are the result of accident, not negligence, and the hazards of such injuries as are necessarily incident to the employment are assumed by the employee in his contract of employment. The master is liable where the injury is occasioned by the failure of a mechanical appliance to perform the work for which it was intended when it is shown that the mechanical appliance failed to perform the work because defective, and where it is further shown that the master either knew, or, by the exercise of reasonable diligence and care for the safety of his servant, should have known and remedied the defect.

It follows that the judgments of the court of appeals and the district court must be reversed, and the cause remanded for a new trial in accordance with the views herein expressed.

Doster, C. J., Johnston, Ellis, JJ., concurring.