# CHARLESTON.

### COOPER *v.* UPTON.

### (On Re-hearing.)

Submitted March 24, 1908.   Decided March 30, 1909.

1. RIGHTS OF BROTHERS.
   The syllabus in this case reported in in 60 W. Va. 648, reconsidered and approved. (p. 401.)

   [MILLER, PRESIDENT, dissenting.]

Appeal from Circuit Court of Upshur County.

Bill by John T. Cooper against E. M. Upton. Decree for plaintiff, and defendant appeals.

*Reversed, and Bill Dismissed.*

DENT & DENT and JAKE FISHER, for appellant.

LINN, BYRNE & CATO, for appellee.

WILLIAMS, JUDGE:

This case is reported in 60 W. Va. 648, and will be found therein stated.

Counsel for appellee in their supplemental petition for rehearing assigned eight reasons why a rehearing should be had, and the former decree of this Court reversed, and the decree of the lower court affirmed. These will be noted in their order.

First. This assignment refers only to the oral argument made in this Court by counsel for appellant which counsel for appellee says was done in violation of an understanding between them that the case was to be submitted on briefs alone. It does not go to the merits of the controversy.

Second. It is insisted that this Court should not have held that the sale of the land was made by Moore to Lee, trustee for Davis, on the 8th day of April, 1902. If the sale was not made on this day, there is no evidence that it was made on any other particular day. A certified copy of the contract entered into by J. K. Moore, as agent for E. M. Upton, and Arthur Lee, trustee, bears date on April 8, 1902. It is signed by J. K. Moore, agent, and is acknowledged by him before a notary

public in the City of Washington on the 24th day of April, 1902, and was recorded in Webster county on May 8, 1902. The copy in the record is an attested copy by the clerk of the county court. It is presumed to have been executed on the day of its date, and the record furnishes no evidence to overcome this presumption. The day of its date rather than the day of its acknowledgment will be taken as the actual date of execution. *Ferguson* v. *Bond,* 39 W. Va. 651. According to appellee's contention it must have been executed before the 19th, because on that day he says he learned of the sale; and if executed on any day before the acknowledgment, why not on the 8th? There is no evidence of any other date. Moore embodies the following language in the contract of sale: "My authority for signing this agreement of sale, is letters and a telegram from E. M. Upton, dated Rochester, N. Y., April 7, 1902, addressed to me and which reads as follows: 'Close deal at thirteen dollars net to us, if five thousand dollars is deposited in some bank as trustee.'"

It is insisted that the agreement of May 16, 1902, does not refer to the sale on the 8th of April. But we can hardly see how this omission to mention the date of the sale would be evidence of the date. It neither proves, nor disproves, that the sale was on April 8th. It does not bear on the point. The agreement of May 16, 1902, was entered into between E. M. Upton, who held the legal title to the lands, and five others who were interested as owners with him, for the purpose of ratifying the sale which had been made by Upton to Lee as trustee of Henry G. Davis. It recites that the sale had been made "with the concurrence and assent of all of the owners of the land, with the exception of John T. McGraw;" and seems to have been made for the purpose of showing his assent to the sale which he had theretofore objected to, he being one of the owners. It does not refer to the sale to Lee by any date. This agreement simply ratifies a sale made by Upton to Lee, trustee; and there is no contention that Upton made more than one sale to him. The plaintiff says that he was in Washington, D. C., on the 19th of April, 1902, and learned from Arthur Lee that he represented Senator Davis and S. B. Elkins in the purchase of West Virginia lands, and that they had just bought the "Upton Lands." He also says, "A little later Henry G. Davis

came into the room and stated 'We have just bought the Upton lands.'" He further states that later on the same day he was at the residence of Senator Elkins and that "he stated to me in so many words that he and Senator Davis had bought the Upton lands." Suppose this testimony were admissible, it certainly would not disprove the fact that the sale was made on April 8, 1902.

Third. It is claimed by counsel for appellee that the record makes out a partnership, or joint interest, between Davis and Elkins at the time of the purchase. This fact he says is not sufficiently denied in the answer, and is therefore virtually admitted. But we find the answer to contain the following denial: "But he denies that Stephen B. Elkins and Henry G. Davis were jointly beneficiaries, or that said Elkins was in any manner interested with the said Davis, or any other person participated with him as a sole *cestui que trust* or that said Davis and Elkins were business partners." And in another part of his answer he avers that Davis bought the land for himself and that "prior to the purchase there was no understanding or agreement between the said Davis and Elkins respecting said lands." A denial of the allegation that Elkins was interested with Davis in the purchase could scarcely be framed in more explicit and unequivocal terms.

Upton states in his deposition that the land was sold through Moore who was acting for him and his associates. Senator Davis in his deposition says that Lee negotiated the purchase for him, and that he bought the lands for him (Davis); that during the negotiation no one was interested with him. He further says that, while he had never been on the lands, he had known of them for some fifteen years prior to that time; and that at the time of the purchase Senator Elkins had nothing to do with the sale or the purchase, but that he afterwards became interested in it. Mr. Lee testifies that his attention was called to these lands by a letter from Mr. Moore, received early in the year 1902, and that he then opened negotiations with Mr. Moore which resulted in the purchase of the tract by Senator Davis at $13.00 an acre; that if Senator Elkins had any interest in it he did not know of it. Mr. John T. McGraw testifies that "Senator Davis knew these lands well," and had talked to him several times about them. The evidence proves that

Davis and Elkins were jointly interested in large bodies of lands in West Virginia, and in large business enterprises, and from this we are asked to infer that they were jointly interested in the purchase of the Upton land. But the record shows that each of them is either the sole owner of, or is interested in, large bodies of land and enterprises in West Virginia, in which the other has no interest whatever.

· The declarations of Lee, Davis and Elkins made to plaintiff on the 19th day of April, 1902, even if admissible testimony, are not necessarily inconsistent with the fact that Davis bought the lands on his own account. The evidence does not show when Senator Elkins acquired an interest; but the positive statement of Senator Davis proves that it was after he had bought of Upton.

Before plaintiff can recover he must prove that his correspondence and conversations with Senator Elkins were instrumental in bringing about the sale. The burden is on him to prove all facts material to his case. This important fact cannot be established by vague and uncertain inferences. Any inference that Elkins was jointly interested in the purchase, which might arise from the fact that he is shown to have, subsequently, an interest in the land, and from the further fact that Elkins and Davis were jointly interested in other large bodies of land, is certainly rebutted and overcome by the direct, positive and unequivocal testimony of Senator Davis to the contrary. Furthermore, Senator Elkins, if plaintiff's contention be true, was a very material witness in his behalf. Why did he not take his testimony? It would have relieved the case from all doubt as to whether or not the purchase from Upton was brought about as a result of the correspondence and conversations between plaintiff and Senator Elkins. But he has given no excuse for not having taken his testimony. The presumption of law, therefore, is, that if he had testified his testimony would have been against, rather than in favor of, plaintiff. *Vandervort* v. *Fouse,* 52 W. Va. 214; *Garber* v. *Blatchley,* 51 *Id.* 147; *Dewing* v. *Hutton,* 48 *Id.* 576; *Union Trust Co.* v. *McClellan,* 40 *Id.* 405; *Wells-Stone Mercantile Co.* v. *Truax,* 44 W. Va. 531; and *Despard* v. *Pearcy,* decided at the present term.

Fourth. This assignment applies to the amount of plaintiff's commissions, and is not important, since his case fails for want

of proof that he found a purchaser. However, we do not doubt but that the numerous letters which passed between plaintiff and defendant relating to the sale of the land established a contract between them as to the compensation, in the event plaintiff had found a purchaser. But in addition to proving the contract it was necessary to prove services rendered under it, and herein we think lies the weakness of plaintiff's case.

Fifth. Plaintiff insists that Upton had constructive notice that Davis and Elkins were jointly interested in the purchase, and that a *prima facie* case for plaintiff was thus made, casting the burden of proof on defendant.

The evidence shows that Upton had authorized Moore to sell the land at the price of $13.00 an acre net to him and his associates, and that he did not know to whom Moore had sold it until after the sale was made; nor do we see any reason why Upton would have been specially interested in knowing this as long as he was satisfied the purchase price was properly secured and he would get his money.

Plaintiff did not have exclusive right to sell this land; he had no option on it, because Upton had refused to give him an option. The only contract between plaintiff and defendant was the one to be gathered from the numerous letters, and which is to the effect that if plaintiff would find a purchaser who would buy the land at a price satisfactory to the owners he would be paid a commission for doing so. Upton still had the right to employ other brokers at the same time to find a purchaser for the same land, and the law would hold him liable to pay only the one who first found him a purchaser able and willing to buy at a price satisfactory to him. In 19 Cyc. 260, the law is thus stated: "Where several brokers are employed to negotiate the same transaction, the one who first succeeds is entitled to the full commission. Where property is placed with several brokers for sale, the owner is bound to pay the broker who in fact effects the sale; and the commission belongs to the one who first procures a contract of sale, although the other first procured a conveyance. If several brokers are employed to effect the same transaction in behalf of their principal, the one who is the procuring cause of the transaction is entitled to the commission."

Upton appears to have employed two brokers to find a pur-

chaser, the plaintiff, who lived in Parkersburg, and one J. K. Moore, who lived in Washington, D. C. But it does not appear that either knew of the other's employment. Lee says he was acting for Davis in the purchase and that his attention was first called to the lands by a letter from said Moore early in 1902; that he replied to the letter asking for description which was furnished to him, and he thereupon called it to the attention of Senator Davis, and that negotiations finally resulted in a purchase of the lands by Davis at the price of $13.00 an acre. Now, upon this state of facts, how can it be said that the plaintiff was the moving cause of the sale, or that the correspondence which he had had previous to that time with Senator Elkins had any influence whatever in bringing about the sale. It cannot be said, except upon pure inference drawn from the relationship and business connection existing between Davis and Elkins; and, as before stated, this inference is overcome by direct and positive testimony.

In fact the correspondence introduced by plaintiff does not show that Senator Elkins was ready to buy, or that he even wanted to buy the land as late as March 27, 1902; because plaintiff on that date wrote to Upton stating that Senator Elkins wanted, by the 1st of April, to know the price, and wanted sufficient time to make examination of the land and the title. On the next day Upton replied to plaintiff that he had not taken the matter up with Elkins; that he would not be able to do so for some days, stating that there were other parties who wanted to buy the property and that it was hard to deal with three or four at the same time. In answer to this letter plaintiff again wrote Upton on April 3rd, advising him "to keep matters warm with Senator Elkins." He also says in this letter that Senator Elkins preferred to get a price of the land through him (plaintiff). On the 5th of April, Upton answered this letter and, among other things, said, "I am negotiating with other parties just at present, and am not at liberty to do anything with you. Perhaps I will be able to take the matter up with you in about ten days time." On the 15th of April, in answer to a letter of the 12th, he again wrote the plaintiff advising him that he thought some disposition had been made of the land.

Does this evidence not show that defendant was dealing alto-

gether with Moore in making the sale and not with plaintiff? He advised him several days before the sale that he was dealing with other parties, and also advised him that he couldn't take the matter up with him on that account until he was through negotiation with the other parties. It was not incumbent on him to advise him who the other parties were; he may not have known himself, as the negotiations seem to have been carried on through his broker, Moore. But it is argued that Moore was only the agent of Davis and not the agent of Upton. There is no proof of this except the fact that Lee says Davis paid Moore his commission; but if Moore was acting as a broker, simply bringing the parties together, and was not vested with any discretion as to the price and terms of the sale to be made to purchaser, the fact that he received his commission from Davis would be perfectly consistent with his relation to Upton. He was authorized by Upton to close the deal at the price of $13.00 an acre, net to him and his associates, and if he got this price it was immaterial to Upton how much Moore made out of the transaction, or from whom he collected his pay. 19 Cyc. 234; 1 A. & E. E. L. 1074; Clark & Skyles on Agency, 823, 1689; *Reynolds* v. *Thompson,* 23 W. Va. 229; *Nolte* v. *Hulbert,* 37 Ohio St. 445; *Clark* v. *Allen,* 125 Cal. 276; *Rupp* v. *Sampson,* 16 Gray (Mass.) 398; *Knauss* v. *Brewing Co.,* 142 N. Y. 70; *Montross* v. *Eddy,* 94 Mich. 100; *Cox* v. *Haun,* 127 Ind. 325; *Orton* v. *Scofield,* 61 Wis. 382; *Mullen* v. *Keetzleb & Lampton,* 7 Bush (Ky.) 253.

Sixth. It is claimed that Upton practiced a fraud upon Cooper by "so juggling existing conditions as to rob Cooper of the portion justly due him," after Upton had seen that Cooper's work was about to result in a sale. This point, we think, is fully answered by the opinion on the other points. Because, if plaintiff has failed to make out a case entitling him to recovery in any event, there can be no fraud. There can be no fraud where there are no rights violated. If he is not entitled to recover upon his contract, and services rendered, the question of fraud has no bearing on the case. And the same reasons which show that he is not entitled to recovery also show the absence of fraud.

It is insisted that plaintiff has made out a *prima facie* case by proving his contract with Upton and by proving that he

found for him a purchaser who was able, willing and ready to buy the land at a satisfactory price. But in order to support this contention it is necessary to assume one of two things, namely: either that Elkins and Davis were jointly interested in the purchase made by Lee, trustee, in which case the price at which the land was actually sold proves that the price was satisfactory to the seller; or, if they were not jointly interested in the purchase, then that Elkins was able, ready and willing to buy at a price satisfactory to the seller. We have already said that joint interest at the time of the purchase by Davis was not proven. And as to what Elkins was willing to pay for the land the record is absolutely silent. On the 11th of March, 1902, plaintiff wrote defendant that he *believed* "the Senator would examine the property under a 60 day option at $15.00 per acre." But there is no evidence in the record that any price was ever stated to him, or that he expressed a willingness to buy it at any price. Neither does the record disclose what price he paid for the interest which he acquired from Senator Davis after the sale.

The Eighth point relied on is that there is a legal presumption in favor of the correctness of the decree of the lower court which operates in this instance in favor of appellee. This is a well established rule in this state, but it is not superior to another rule announced equally as often by this Court, which is that when the decree of the lower court is plainly wrong, it should be reversed.

It is not so much a case of conflict of testimony as it is a case lacking in sufficient proof to establish plaintiff's claim, even admitting the truth of all his testimony which we have done in reaching our conclusion.

We think it was error to decree a recovery in favor of plaintiff on the proof, and will reverse the decree appealed from, and will enter in this Court such decree as the court below should have entered, which is that the plaintiff's attachment be quashed and his bill dismissed.

*Reversed and Bill Dismissed.*