## OKLAHOMA RAILWAY CO. v. CITY OF GUTHRIE.

No. 23811.    Nov. 26, 1935.

Hayes, Richardson, Shartel, Gilliland & Jordan, for plaintiff in error.

Merle G. Smith, for defendant in error.

PER CURIAM. The city of Guthrie, Okla., a municipal corporation, hereinafter referred to as plaintiff, filed its petition for mandamus in the district court of Logan county, Okla., against the Oklahoma Railway Company, a public service corporation, hereinafter referred to as defendant, al'eging that the defendant is a street railway company, operating an interurban system which extends into the limits of the city of Guthrie. The petition further alleges that the defendant is the owner of certain abandoned railway tracks and ties within the limits of the city. That this abandoned property constitutes a hazardous nuisance, which should be abated, and to this end the petition prays for a writ of mandamus, compelling the defendant to remove the abandoned tracks and railroad ties from the paved streets of the city, and there-after to repair the paving and surface of the streets where the said property is located. An alternative writ was issued on October 10, 1931, and the record shows that a "true and certified copy" thereof was served on the defendant on October 12, 1931. The writ required the defendant to show cause on or before October 23, 1931, but on October 19th, on motion of both parties, an order was entered extending the time for the filing of return to the writ to be due October 31st. On October 29th, the defendant filed a motion to quash service of the writ. This motion was overruled and thereupon the defendant filed its answer, in which it denied ownership of the tracks and ties in question. The cause came on for hearing, and at the conclusion of the plaintiff's evidence the defendant interposed a demurrer thereto, which was overruled. The defendant then introduced its evidence, and after both parties rested, the court found in favor of the plaintiff on the issue of ownership, and thereupon issued a peremptory writ of mandamus. Motion for new trial having been duly made and overruled, the cause is now before us on appeal.

The defendant first insists that its motion to quash should have been sustained. It contends that an alternative writ of mandamus under our statute can be properly served only when the original of the writ is served (sec. 735, O. S. 1931). As already observed, only a "true and certified copy" of the writ was here served on the defendant. In Ellis et al. v. Outler et al., 25 Okla. 469, 106 P. 957, this court held the contention to be well taken. However, it will be noted from the foregoing statement that the defendant, prior to the return date set in the alternative writ, appeared and asked that the time for the return to the writ should be extended. The court, on motion of both parties, then entered its order extending the time. This constituted a general appearance. Bishop-Babcock-Becker Co. v. Hyde, 61 Okla. 250, 161 P. 172. It follows that the subsequent fi'ing of the motion to quash service, which is a special appearance, was futile, and, therefore, there is no merit to this assignment of error.

The next question for our determination is whether the record contains sufficient competent evidence upon which the granting of the peremptory writ may be sustained. The defendant contends that a review of the evidence will establish the fact that the defendant is not and never was the owner of the property in question. It asks for the application of the rule prevailing in equity cases, which is to the effect that this court may consider the whole record, weigh the evidence,

and determine whether the judgment of the trial court is against the weight thereof. This rule presupposes a disputed issue of fact. Inasmuch as our conclusion is that the plaintiff has failed entirely to carry its burden with respect to the issue of ownership of the property, the rule contended for need not be brought into operation.

This court has consistently held that a "mandamus will not be awarded unless the party seeking the same shows a c'ear legal right thereto." State ex rel. Thomas v. Brenner et al., 171 Okla. 320, 42 P. (2d) 823: Clarence L. Boyd Co., Inc., v. Blachly, 171 Okla. 626, 43 P. (2d) 462; State ex rel. Fulton v. State Election Board, 168 Okla. 446, 33 P. (2d) 800. It is not denied in this case that abandoned street railway tracks on the streets of a municipality constitute a nuisance, and that the plaintiff would, therefore, have the clear legal right to look to the owner of the tracks and ties for an abatement of the nuisance.

19 R. C. L. p. 1161, sec. 436, provides:

"The structures laid in the street under a franchise, although attached to the soil, remain personal property and belong to the corporation which laid them. They cannot be lawfully used by another corporation without compensation to their owner. A municipal corporation does not by the mere grant of a franchise to a public service corporation become the owner of the tangible property used in operating the service, nor, unless the ordinance granting the franchise expressly so provides, can it become such owner by the forfeiture or termination by limitation of the franchise. When the franchise has expired or been revoked the corporation can be compelled to remove its structures, and, on the other hand, if it desires to remove them, it cannot be prevented from so doing."

Thus it will be observed that the clear legal right in the plaintiff to proceed for mandamus is grounded, as it should be, upon the fact that the defendant is the owner of the tracks and ties. It becomes necessary, therefore, to review the evidence with fidelity, in order to ascertain whether the burden resting upon the plaintiff to prove ownership of the property in the defendant has been carried. On this issue the evidence of the plaintiff was substantially as follows: It introduced evidence tending to establish that a franchise was granted to Oklahoma Traction Company in 1903 to operate a street railway system in the city of Guthrie, and in the following year the franchise and property were duly transferred to Guthrie Railway Company. The Guthrie Railway Company then continued to operate the street railway system until the year 1920, when, at the request of the defend-

ant, the following ordinance was duly adopted by the board of commissioners of the plaintiff:

"Be it Ordained by the Mayor and City Commissioners of the City of Guthrie:

"Section 1. Consent is hereby given to the Guthrie Railway Company and to the Oklahoma Railway Company for the sale and conveyance to said Oklahoma Railway Company of all the property in the city of Guthrie belonging to the Guthrie Railway Company, including all rights under Ordinance No. 582, city of Guthrie, being an ordinance authorizing the Oklahoma Traction Company, its successors and assigns, to construct, maintain and operate a railway system in the streets and alleys of the city of Guthrie and regulating the construction, operation and maintenance thereof which ordinance became effective May 30, 1903; also all rights under ordinance No. 709 of the city of Guthrie being an ordinance entitled, An Ordinance Amending Ordinance No. 582 of the city of Guthrie, entitled, An Ordinance Authorizing the Oklahoma Traction Company, its successors and assigns to construct, maintain and operate a railway system in the streets and alleys of the city of Guthrie, and regulating the construction, operation and maintenance thereof; which consent to the transfer of said property and assignment of said Ordinance is conditioned upon the purchaser reconstructing and maintaining and operating the following trackage within the city of Guthrie, to wit:

"Commencing at Warner avenue and 18th street thence eastward to 7th street on Warner avenue; thence south on 7th street to Oklahoma avenue; thence east on Oklahoma avenue to Capitol boulevard; thence north on Capitol boulevard to Cleveland avenue; thence east on the south side of Cleveland avenue in the parking to Drexel boulevard; thence south on Drexel boulevard to Springer avenue; and thence eastward along Springer avenue and on the route as now constructed to the present terminus of the said Springer avenue route; also,

"Commencing at Harrison and Division; south along Division to the city limits. The line last mentioned, however, may be removed and discontinued when the said Oklahoma Railway Company shall build and construct over its own private right of way and entrance to the city of Guthrie from some point near Electric Park to some point in Harrison avenue between the Atchison, Topeka, & Santa Fe Railway and Division street, also

"Commencing at Ok'ahoma avenue and 2nd street; south on 2nd street to Harrison: east on Harrison to Division; north on Division to Ok'ahoma avenue.

"Section 2. Consent is hereby given to the abandonment and removal of the following tracks, to wit:

"Commencing at Division and Harrison, east on Harrison to Ash street, south on Ash street to Springer and east on Springer to Drexel: also

"Commencing at Oklahoma and Oak, north on Oak to Warner, east on Warner to Drexel and south on Drexel to Cleveland.

"Commencing at 18th and Warner, thence southward to the end of the present track;

"Where tracks are removed from paved streets this company shall be required to re-surface and retamp foundations and to re-place the bricks in the space occupied by the tracks with such additional bricks as may be necessary, fully repaving the space occupied by said tracks, leaving the same in good passable condition and service.

"Section 3. Provided the consent to use the parking on the north and east sides of Capitol Square for said street railway track shall be for a period not to exceed five years from the date of the approval of this ordinance.

"Section 4. This ordinance shall be and be-come effective on its approval and publica-tion, as provided by law, and upon the ac-ceptance of the same in writing by the Okla-homa Railway Company."

It was further shown that the street rail-way system as such discontinued operation in the summer of 1927. That between 1920 and 1927 the street cars used on said system had painted thereon the name of the defend-ant, and that the name of Guthrie Railway Company did not appear anywhere on the equipment, nor did it maintain any office in the city of Guthrie, nor did the Guthrie Rail way Company maintain any contact with the public in its own name, all operations appear-ing as if conducted by the defendant; that all correspondence relating to the system was had on stationery bearing the name of defendant; that though no written acceptance of the ordinance, which we have quoted in full, was made by the defendant, as was re-quired by the terms of the ordinance, yet all of the changes in the system authorized by the said ordinance, providing for the aban-donment of service on certain streets and providing for the repair of the tracks, were done and performed by the defendant; that those having business, official and otherwise, relating to the maintenance and operation of the street railway system, conducted their business with the defendant company through its executive officers; that in 1927, after the system was abandoned as a street railway, the workmen of the defendant, pursuant to a dismantling order issued by the defendant, removed the poles, wires and such of the track as was laid on unpaved streets in the city of Guthrie, leaving intact the tracks and

ties, to the maintenance of which the plain-tiff now complains.

By agreement of counsel it was stipulated that in 1913, the defendant purchased all of the issued and outstanding bonds of the Guthrie Railway Company. The par value of these bonds was $120,000, and the purchase price was satisfied by the transfer of junior mortgage bonds of the defendant of the par value of $60,000. It was further stipulated that since 1922 no stockholders' meeting of the Guthrie Railway Company was held; that practically all of the issued and outstanding capital stock of Guthrie Railway Company was owned by persons who also held stock in the defendant company; that at the time of the last meeting of stockholders of the Guthrie Railway Company, its officers were the same persons holding the same offices in the defendant company, and that some of the members composing the board of directors of the Guthrie Railway Company were also on the board of directors of the defendant company.

The defendant, without contradicting the essential facts introduced by the plaintiff, offered evidence tendng to show the following facts, which were likewise uncontradicted: That the Guthrie Railway Company was or-ganized in 1905, and that at that time it ac-quired the railway system and franchise in question from the Oklahoma Traction Com-pany; that the defendant was organized in 1904, and to begin with, its interurban lines did not extend beyond the town of Edmond, Okla. Subsequently, when its lines were ex-tended from Edmond, Okla., to the city of Guthrie it used part of the city tracks of the Guthrie Railway Company at its then termi-nal; that sometime after it built its own ter-minal in the city of Guthrie the defendant abandoned the use of the tracks of the Guth-rie Railway Company; that the defendant at no time acquired either the franchise or the property of the Guthrie Railway Com-pany; that during the period when the de-fendant used part of the tracks of the Guth-rie Railway Company in the city of Guthrie, it did so for a fixed consideration and under a written lease arrangement which was of-fered in evidence; that as the equipment, in-cluding street cars, of the Guthrie Railway Company became worn out, or obsolete, the defendant, under a separate agreement, fur-nished its equipment and street cars bear-ing its name to the Guthrie Railway Com-pany for a fixed consideration; that the Guthrie Railway Company, from the time of its organization and down to the year 1927, when it ceased functioning under its fran-

chise as a street railway company, filed its separate annual reports with the Corporation Commission, as is required by law, and that these reports disclosed the date of its organization, its stockholders, the number of shares held by each, the details of operation, revenue and expense, its balance sheet, together with its accounts and records of its equipment, investment, and indebtedness; that the defendant at no time owned any of the capital stock of the Guthrie Railway Company, and that the persons holding practically all of the capital stock of the Guthrie Railway Company held only a minority of the capital stock of the defendant; that the only financial interest the defendant had in the Guthrie Railway Company was the said bonds which it purchased, and that the mortgage covering the same never was foreclosed; that up to the year 1927 the Guthrie Railway Company kept its separate books of account; that it never dissolved, nor did it ever surrender its charter, and during each year of its existence it made returns to the State Board of Equalization in the manner required by law; that the Guthrie Railway Company also paid its separate taxes assessed against it separately for each year. Vouchers showing payment of these taxes were introduced in evidence. That all of these taxes were paid out of the funds of the Guthrie Railway Company, except that for the year 1927, said company having gone out of active business, it lacked the sum of $30 to make up the sum due for the taxes paid that year, and that this sum was accordingly advanced to it by the defendant company. It was further shown that the Guthrie Railway Company made separate income tax returns to the federal government for all the years in question, but that it never paid any income taxes for the reason that the returns showed no taxable income; that during the period when part of the tracks of the Guthrie Railway Company were used by the defendant, it entered into an agreement with the Guthrie Railway Company whereby the track gang of the Guthrie Railway Company was taken over by the defendant, and whenever any work was done on the tracks of the Guthrie Railway Company, it was billed for such services, and such bills were paid by the Guthrie Railway Company out of its own funds. That an agreement was also entered into between the parties whereby power was being furnished and sold by the defendant company to the Guthrie Railway Company for a fixed consideration, which was likewise paid by the Guthrie Railway Company out of its funds: that a similar arrangement existed also with respect to fuel furnished by the defendant to the Guthrie Railway Company.

It was further shown that the defendant company never did, in writing or otherwise, accept the ordinance, which we have quoted in full, and that the change in the lines contemplated under the terms of the said ordinance was done by the employees of the defendant, but the expense therefor was billed to the Guthrie Railway Company and it paid for the same; that the ordinance was passed at the instance of the defendant for the reason that it was at that time contemplated that its interurban line from Edmond to Guthrie should be merged with the said railway system of the Guthrie Railway Company; that the city system would, pursuant to that plan, be sold to the defendant company in consideration of its bonds which were to be issued to cover the project; that in order to accomplish this purpose the street railway system of the Guthrie Railway Company would first have to be put on a paying basis, or else it would be contrary to the terms of the then existing mortgage of the defendant company to carry out the plan; that because of this plan the ordinance provided that it should not go into effect until the same would, in writing, be accepted by the defendant company; that the Guthrie Railway Company could not be put in a safe economical position, and for that reason the plan was abandoned, and the ordinance was never accepted; that no meeting of stockholders or directors was held by either of the street railway companies to carry the plan into effect and no submission of the plan for approval by the Oklahoma Corporation Commission was made, and that the franchise and properties of the Guthrie Railway Company never were acquired by defendant company by purchase or otherwise; that up to the year 1927 the Guthrie Railway Company maintained its own working force and paid its own wages out of its own funds; that some time after the Guthrie Railway Company ceased operations, the defendant company went into the city of Guthrie and dismantled and appropriated to its own use a part of the system, and removed therefrom all trolleys, poles, and tracks which were laid on unpaved streets; that the engineer in charge of this work was on the pay roll of the defendant, but was also a stockholder and director of the Guthrie Railway Company; that the fair and reasonable value of the salvage so removed by the defendant company was credited against past-due interest due it from the Guthrie Railway Company on account of the said bond issue; that when the president of the Guthrie Railway Company died in 1922, the then vice president succeeded to the duties of the president, and that when he died, somewhere between

1925 and 1927, no appointment to fill that vacancy was made.

On cross-examination of defendant's witnesses it was shown that when the dismantling of part of the system of the Guthrie Railway Company took place, no authority, written or otherwise, was obtained from the Oklahoma Corporation Commission, and that if the salvage value of the tracks and ties remaining on the paved streets of the city of Guthrie had exceeded the value of the removal of the same and the refilling and repairing of surface of the streets, such tracks and ties would have been removed at the time the remaining system was dismantled; that no formal meeting of board of directors of either of the railway companies was had, in order to authorize the dismantling and appropriation of the said property.

While it is true that the record does not contain any competent evidence upon the part of the plaintiff to prove ownership of the tracks and ties now remaining on the paved streets of the city of Guthrie, it is also true that the evidence introduced by the plaintiff abundantly establishes the fact that the defendant company controlled the said property, used it, and occupied it. From this evidence of control and possession a prima facie presumption of ownership arises. In the case of Midland Valley R. Co. v. Larson, 41 Okla. 360, 138 P. 173, this court said:

"In the absence of evidence to the contrary, a presumption of ownership of real or personal property arises from the possession and control of such property."

This presumption is called "slight" by some authorities. (See Underhill on Evidence, p. 342, sec. 229.) Other authorities characterize this presumption as being "the lowest species of evidence." (See Chamberlayne on Modern Law of Evidence, vol. 2, sec. 1129.) Be that as it may, the presumption is at any rate a rebuttable one, and text-writers have included it in the classification of disputable presumptions. See Jones' Commentaries on Evidence, vol. 1, p. 82; 10 R. C. L. sec. 22, p. 877.

However, when the defendant, without contradiction, explains the control and possession, and proves that the Guthrie Railway Company, and not it, is the owner of the tracks and ties in question, then the prima facie presumption, which up to that point is properly indulged in, becomes neutralized, and from then on the plaintiff must either re-assume the burden of putting the issue of factual ownership in evidence, or else fail in his cause of action. The nature of this

class of presumptions was aptly put in Mockowik v. K. C., etc., Ry. Co., 196 Mo. 550, 94 S. W. 256, wherein it is said that rebuttable presumptions may be looked on as "the bats of the law, flitting in the twilight and disappearing in the sunshine of actual facts." In the case of Stumpf v. Montgomery, 101 Okla. 257, 226 P. 65, this court was considering the prima facie presumption of scope of employment which arises from proof of relation of master and servant, and the court said:

"'But plaintiff insists in his brief that "the mere ownership of the car raises the presumption that the driver was the agent of the owner." This is true under the language of Justice Kane in Boling v. Asbridge, supra, but the presumption merely stands in lieu of proof of the agency, and when the agency is clearly disproved by uncontroverted testimony, the presumption is overcome and dispelled, and no longer exists.' (McCullough v. Harshman, 99 Okla. 262, 226 P. 555.)

"The rule announced in the Harshman Case is the true rule. A presumption cannot in itself possess probative weight, but merely necessitates evidence to meet the prima facie case which it creates. When evidence is introduced rebutting the presumption, the presumption disappears, leaving in evidence the basic facts which are to be weighed. U. S. v. Ross, 92 U. S. 281, 23 L. Ed. 707; Union Pacific Ry. Co. v. Bullis, 6 Colo. App. 64, 39 P. 897; Ray v. Swain, 148 Ga. 203, 96 S. E. 209; M. W. A. v. Kincheloe (Ind. App.) 93 N. E. 452; Chicago, etc., R. Co. v. Rhoades, 64 Kan. 553, 68 P. 58; Potts v. Pardee, 220 N. Y. 431, 116 N. E. 78, 8 A. L. R. 785; Nicholson v. Neary, 77 Wash. 294, 137 P. 492; People v. Wong Sang Lung, 3 Cal. App. 221, 84 P. 843; Cooper v. Upton, 65 W. Va. 401, 64 S. E. 527; Maupin v. Solomon, 41 Cal. App. 323, 183 P. 198; Halverson v. Blosser, 101 Kan. 683 168 P. 863, L. R. A. 1918B, 498; Vallery v. Hesse Building Material Co. (Mo. App.) 211 S. W. 95.
* * *

"The presumption, with which we are here dealing, is a legal presumption as distinguished from an inference or presumption of fact. Its existence imposed on the party, against whom it was invoked, the duty to offer evidence as to the facts. In the absence of such evidence, the jury would have been compelled to reach a conclusion in accordance with such presumption, but the party against whom the presumption was invoked having offered evidence to the contrary, the presumption disappeared, and it was then necessary to determine the case in accordance with the facts and the reasonable inferences to be drawn therefrom, without regard to the legal presumption, which had existed prior to the introduction of the evidence as to the particular fact covered by the presumption. In the instant case it cannot be said that

the reasonable inference to be drawn, from proof of ownership of a car and that it was being driven by a servant or agent of the owner, is that the servant or agent, at the time of the accident, was acting within the scope of her authority."

In the case of Atlantic Coast Line Ry. Co., v. Drake, 94 S. E. 65, the Court of Appeals of Georgia deals with the prima facie presumption of ownership which arises from proof of control and possession, and says:

"Again, the possessor of property, whether realty or personalty, is prima facie presumed to be the owner thereof; but this presumption may always be rebutted by positive evidence showing a better title in the other party, and the presumption alone will not withstand such evidence. Park's Ann. Code, secs. 4472, 4482, and citations. Another familiar application of the same rule is to be found in claim cases, where, by statute, the possession of the property at the time of the levy creates a prima facie presumption that such possessor, whether claimant or defendant in fi. fa., is the true owner thereof (Civil Code 1910, sec. 5170), yet such presumption, standing alone, can never prevail over positive, unequivocal, and uncontradicted evidence of title in the other alleged owner. Green v. Wade-Chambers Grocery Co., 19 Ga. App. 454, 91 S. E. 789. Illustrations of the application of this rule could be multiplied until the entire category of prima facie presumptions is exhausted, but further illustrations are wholly unnecessary."

It will serve no good purpose to elaborate on this plain and undisputed proposition. Further illustrations of the presumption of ownership, and when the same becomes neutralized may be found in Kellogg v. Church Charity Foundation, 203 N. Y. 191, 96 N. E. 406, Ann. Cas. 1913A, p. 883; Bergen v. Riggs, 34 Ill. 170, 85 Am. Dec. 304; East St. Louis Connecting Railway Company v. Altgen, 210 Ill. 213, 71 N. E. 377; 22 C. J. 126, sec. 65.

It is insisted that the appropriation by the defendant for its own use of the trolleys, poles, and railroad track, which it dismantled, together with the fact that the public was led to believe that it is the owner of the tracks and ties in question, if not actual proof of ownership, ought to at least estop the defendant from denying ownership, and to support this proposition counsel has cited authorities to the effect that the absorption of all or substantially all of the assets by one company of another will render the successor company liable for all of the obligations of the absorbed company. In answer to this contention we must first observe that the petition for mandamus and the peremptory writ issued thereon are both based not on indicia of ownership, not on apparent ownership; in other words, not on estoppel, but upon the "plain legal right" which is grounded on actual ownership. There are numerous cases holding that where one company is the reincarnation of another, or in cases where a transferor company divests itself of all of its valuable assets and does not itself receive any consideration therefor, then the transferee company becomes liable for all the liabilities of the transferor company, upon principles of estoppel, or upon principles of constructive fraud. See the extensive note attached to the Oklahoma case of Skirvin Operating Co. v. Southwestern Electric Co., 71 Okla. 25, 174 P. 1069, in 15 A. L. R. 1104. But these cases can have no application here. The mandamus in this case is not sought upon equitable grounds, nor can it be granted on anything but clear legal rights. Furthermore, the principles of estoppel and constructive fraud will arise in cases where the relation of debtor and creditor exists. It cannot be contended that anyone other than the owner of the tracks can be compelled to abate the nuisance created thereby. Moreover, the principles which spring from estoppel or constructive fraud are perhaps in any event not applicable to corporations performing public functions. Such a corporation can only assume such express burdens as are permitted by the Corporation Commission. It would frustrate, or, at least, cripple, the purpose for which a street railway company is franchised to permit it to assume burdens other than those expressly assumed. The very question was raised and decided in Capital Traction Co. v. Offutt, 17 App. D. C. 292, 53 L. R. A. 390. Even if the record would support the conclusion that the dismantling and appropriation of part of the system by the defendant company was without at least the tacit consent of the Guthrie Railway Company, still this would not prove ownership of the tracks and ties in dispute to be in the defendant. It would merely prove that the defendant is guilty of conversion of property which does not belong to it. It is said that the dismantling was without the permission and order of the Corporation Commission and without the permission of the city authorities of plaintiff. Still this would not serve to prove ownership of the tracks and ties in question. Had the plaintiff proceeded to prevent the dismantling, or to recover damages for stripping the Guthrie Railway Company, and rendering it financially unable to abate the nuisance complained of, a different question would be presented. Here the plaintiff relies, as in-

deed it must, on ownership. The proof of occupation or possession and control gives it the right to rely on the prima facie presumption of ownership; but when the defendant proves by uncontradicted oral and documentary evidence that ownership of the tracks and ties is in a third party, the plaintiff can no longer rely on the prima facie presumption, because it has become entirely neutralized. The result, therefore, is that there is no evidence upon which to grant the writ. It follows, therefore, that the case must be reversed, with directions to deny the writ.

The Supreme Court acknowledges the aid of Attorneys M. H. Silverman, O. H. Searcy, and Arden E. Ross in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and fact was prepared by Mr. Silverman and approved by Mr. Searcy and Mr. Ross, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and RILEY, BUSBY, PHELPS, and CORN, JJ., concur.