THE MISSOURI, KANSAS & TEXAS RAILWAY COMPANY *et al.* v. L. T. MERRILL.

THE KANSAS CITY SUBURBAN BELT RAILROAD COMPANY v. L. T. MERRILL *et al.*

Nos. 11,509, 11,600.  (60 Pac. 819.)

1. RAILROADS—*Injury to Employee—Liability of Connecting Lines.* A railway company loaded a coal-car with iron pipe for shipment to a town beyond the terminus of its line. One of the end-gates of the car was not provided with hooks or eye-bolts to hold it in an upright position. Wooden cleats were nailed to the sideboards of the car to fasten the end-gate in place. At the end of its road the car was inspected by the first company and turned over to another railroad company, which again inspected it and delivered it to a third railway company having a line running to the place of destination. A switchman employed by the latter, while engaged in making up a freight-train, in going back over the cars while they were in motion, stepped on this end-gate and attempted to reach to a ladder of a box car next to it in the train, about four feet distant. The pressure of the iron pipe had pushed the sideboards to which the cleats were nailed away from the end-gate, so that the latter toppled over, causing plaintiff to fall between the cars, to his injury. *Held,* that it was within the knowledge and contemplation of the first two companies that such cars were to be handled by switchmen of connecting lines, and that they owed a duty to the latter to the extent that the car transported should be in reasonable repair, so that in switching it no harm should result. *Held further,* that the first two railway companies may be sued jointly; that the negligence of the company in possession of the car at the time of the accident in failing to inspect it was concurrent merely, and did not break the causal connection between the negligence of the first two companies and plaintiff's injury.

2. ——— *Hypothetical Question.* An experienced railroad man, familiar with coal-cars and the work of making up freight-trains, was asked his opinion regarding the proper position, or proper steps, for an employee of the railway company to take in order to pass from a coal- to a box car when the same were in motion. A hypothetical question put to the witness described the situation of the plaintiff and his surroundings immediately prior to being hurt. *Held,* that the opinion sought was competent; that it cannot be assumed that the jury were equally qualified with the witness to know the proper position for plaintiff to take at the time, and that the question called for information on a subject technical in character, requiring peculiar knowledge and training.

3. ——— *Contributory Negligence.* An instruction criticized which tended to leave an impression with the jury that unless defendants, by their evidence, established contributory negligence, the defense of such contributory negligence must fail.

Error from Wyandotte court of common pleas; W. G. Holt, judge. Opinion filed April 7, 1900. Reversed.

### STATEMENT.

This was an action to recover damages for personal injuries, brought by L. T. Merrill. Briefly stated, the facts are as follows : At the time of the injury he was in the employ of the Chicago Great Western Railway Company in the capacity of switchman. A coal-car was loaded with iron pipe by the Missouri, Kansas & Texas Railway Company in St. Louis for shipment to St. Joseph, Mo. There were sideboards and end-gates on the car a little more than three feet high. The sideboards were stationary, but the end-gates were fastened to the floor of the car with hinges so that they would lie flat when the car was not loaded. There were no hooks or eye-bolts on either end-gate and no means of fastening them in place. Cleats were nailed on the inside of the end-gates, fastened to the sideboards of the car, against which the end-gates rested when in an upright position. When the car was loaded the iron pipes came up to a level

with the top of the sides and end-gates. Upon the arrival of this car in Kansas City it was inspected by an authorized inspector of the Missouri, Kansas & Texas railway. It was then delivered to the Suburban Belt railway, to be delivered to the Chicago Great Western railway. The Suburban Belt company inspected the car and delivered it, with about twenty-five others, to the Chicago Great Western company for transportation to St. Joseph, Mo. The latter company, in making up a train in its yards at Kansas City, Kan., was engaged in switching this with other cars. It, with several others, was attached to an engine backing in a southeasterly direction. While the cars were moving at a rate of speed between four and five miles an hour, plaintiff below started toward the south end of the moving cars for the purpose of getting off and throwing a switch. It was necessary for him to go over and across this coal-car, which was between two box cars. The cars were on a curve in the yards. He walked on top of the iron pipes, and, standing upon the end-gate, attempted to reach an iron ladder on the box car immediately south of and attached to the coal-car. The ladder was on the side but near to the end of the box car. There was a distance of about four feet between the end-gate of the coal-car and the ladder of the box car. He stood upon the end-gate, and in his efforts to reach or jump so that he might catch hold of the ladder, the thrust given by his body against the end-gate caused it to topple over several inches, by reason of which he was thrown under the train, run over, and injured. It appeared that the weight of the load had sprung the sides of the coal-car outward so that the cleats against the end-gate did not perform the service intended in holding the same in a rigid position. The

43—61 KAN.

ends of the iron pipes did not rest against the end-gate. There was a space of about fifteen inches between the inside of the end-gate and the ends of the pipes; and outside the end-gate the bottom of the car projected, leaving a platform of from eighteen inches to two feet. The inspector of the Chicago Great Western company examined the car and placed a red card upon it, indicating that it needed repairs There was no evidence, however, that Merrill saw this card.

The acts of negligence charged against defendants below were a failure upon the part of the Missouri, Kansas & Texas and Suburban Belt companies to place the car in a reasonably safe condition before delivering it to the connecting carrier; that the Missouri, Kansas & Texas company carelessly loaded it with iron pipe while it was in a defective and dangerous condition and delivered it to the Suburban Belt company, and that the latter carelessly delivered it to the Chicago Great Western company while it was in the same dangerous and defective condition.

There was a verdict and judgment for the plaintiff below against the Missouri, Kansas & Texas Railway Company and the Kansas City Suburban Belt Railroad Company jointly.

*T. N. Sedgwick, Silas Porter,* and *J. L. Denison,* for M. K. & T. Rly. Co.

*Trimble & Braley, John A. Eaton,* and *O. L. Miller,* for K. C. S. B. Rld. Co.

*Angevine & Cubbison,* for L. T. Merrill.

The opinion of the court was delivered by

SMITH, J.: Plaintiffs in error deny the right of plaintiff below to recover at all under the petition.

It is insisted that, if entitled to damages, he must look to the Chicago Great Western Railway Company, by which he was employed at the time of the accident.

We cannot agree with them in the position taken. When the iron pipe was received by the Missouri, Kansas & Texas company at St. Louis as freight for transportation to St. Joseph, Mo., it was contemplated that the car in which it was loaded should be delivered at Kansas City to a connecting carrier, for the reason that the receiving company had no line from Kansas City to the place of destination. It was known also that connecting carriers employ switchmen, and that they are necessary to the work of making up trains. With this knowledge, it was the duty of both the plaintiffs in error to provide a car which would be reasonably safe for the service to be performed and for employees of connecting lines to handle, to the end that freight might be expeditiously carried to its destination. The first carrier owed a duty to the employees of the second, and both to the third, to the extent that the car transported should be in such reasonable repair that in switching it no harm should result to the employees of the latter railroad company in performing such work. While no proof was made showing what route the car was to take from Kansas City to St. Joseph, yet it was intended that it should be forwarded over some one of the lines running between the two cities. It was never contemplated that it should be unloaded at Kansas City and the contents transferred to a car belonging to a connecting line. This would be an expensive and unusual practice, contrary to modern methods of handling such freight.

Negligence on the part of the Chicago Great Western Railway Company will not excuse the plaintiffs in

error either for their failure to inspect, or, having inspected the car, permitting it to be delivered to a connecting line in a condition which might be dangerous to switchmen and other employees engaged in the practical part of the business of railway transportation. The question is whether plaintiffs in error were negligent. This is not determined by a showing that another company was equally or more careless. (*Pennsylvania Railroad Co. v. Snyder*, 55 Ohio St. 342, 45 N. E. 559 ; *Moon v. Northern Pacific R. Co.*, 46 Minn. 106, 48 N. W. 679 ; *Savannah F. & W. Railway Co. v. Booth*, 98 Ga. 20, 25 S. E. 928 ; *Horne v. Meakin*, 115 Mass. 326 ; *Heaven v. Pender*, 11 L. R., Q. B. Div. 503 ; *Thrussell v. Handyside & Co.*, 20 L. R., Q. B. Div. 359 ; *Elliott v. Hall*, 15 L. R., Q. B. Div. 315.) Neglect of such duty cannot be justified or excused on the ground that no contractual relation existed between the person injured and the parties guilty of the negligent acts. (*Garnett v. Phœnix Bridge Co.*, 98 Fed. 192.) Railway companies are required to receive and transport freight-cars offered for that purpose which are of a gauge adapted to their lines. The necessities of commerce demand this. (*Michigan Central R. R. Co. v. Smithson*, 45 Mich. 212, 7 N. W. 791 ; *P. & P. U. Ry. Co. v. C. R. I. & P. Ry. Co.*, 109 Ill. 135 ; *Louisville and Nashville Railroad Co. v. Boland*, 96 Ala. 626, 11 South. 667.)

Under the facts developed at the trial, we do not feel justified in determining as a matter of law that the conduct of the defendant in error in his effort to go from the coal-car to the box car in the manner he did was negligent to a degree preventing a recovery. The cars were in motion. He had a duty to perform, which required his passing from one car to another. This involved a climbing up from a flat to a box car

and going over the space between the two where they were coupled together. The end-gate could have been held up securely in a rigid position by the use of hooks and eye-bolts, which the proof showed are usually employed for that purpose. The cleats used were an imperfect substitute for such appliances. It appeared from the testimony that these cleats were rendered ineffective for the purpose intended by the pressure of the load pushing the sideboards away from the ends of the end-gate and permitting the latter to fall inward past the cleats. While the attempt of plaintiff below, by standing on the end-gate, to reach over to the ladder of the box car on the outside of the curve, a distance of four feet, seems to us to be a careless manner of crossing, yet we think it would be an unwarranted interference with the province of the jury so to declare as a matter of law, in view of the duties the defendant in error was called upon to perform, considering his surroundings at the time.

Plaintiffs in error contend that there were a safe and an unsafe way of going from the coal-car to the box car, and that Merrill adopted the latter. It does not stand out clear from the testimony in the record that the way which plaintiffs in error would have had Merrill make the crossing was the safer one. No instruction was asked by defendants below, nor any given, to the effect that, if there were a safe and an unsafe way of going from the one car to the other, plaintiff below must employ the former. While we might conclude that Merrill, by stepping down upon the platform between the end-gate and the box car, could have gone over safely, yet there are no findings of the jury upon that subject. The comparative danger would have been more prominent in the case had the expert testimony referred to hereafter been admitted. If the

end-gate had been solid no accident would in all probability have happened.    Had it remained firm, Merrill might have reached over to the ladder on the box car with safety.

Nor can we hold that plaintiff below, under the circumstances and in the presence of duties he was required to perform, was guilty of contributory negligence in failing to observe that hooks and eye-bolts were lacking to hold up the end-gate on which he stepped. (*Pennsylvania Railroad Co. v. Snyder*, supra.) In *Beaver v. A. T. & S. F. Rld. Co.*, 56 Kan. 514, 43 Pac. 1136, it was said:

"In an action to recover for personal injuries, where the defense is contributory negligence on the part of the plaintiff, the court cannot take the case from the jury, and determine as a matter of law that the plaintiff was negligent, where the standard of care required of him was a subject upon which different opinions might be entertained, and where the facts shown and inferences to be drawn from them were such that reasonable minds might differ with respect to whether he had acted as a reasonably prudent man should have done under the circumstances."

Walking over a train of flat cars while the same are in motion, or stepping from one of such cars to another while the train is moving, is not negligence *per se*. (*A. T. & S. F. Rld. Co. v. McCandliss, Adm'r*, 33 Kan. 366, 6 Pac. 587 ; *Snow v. Housatonic Railroad Company*, 8 Allen, 441.)

The claim that the two railroad companies, defendants below, could not be joined in the action is without merit.    The negligence of the three was concurrent, and plaintiff below might have sued the three jointly, or one or more separately. (*Kansas City v. Slangstrom*, 53 Kan. 431, 36 Pac. 706 ; *Railway Co. v. Posten*, 59 id. 449, 53 Pac. 465 ; *Railway Co. v. Mar-*

*tin*, 59 id. 437, 53 Pac. 461; *Kansas City v. File*, 60 id. 157, 55 Pac. 877.)    All were engaged in a common purpose — the transportation of the gas-pipe and the car in which it was loaded from St. Louis to St. Joseph.    If the Missouri, Kansas & Texas company had not furnished the defective car the accident would not have happened.    The other companies contributed to the injury of Merrill by failing in their duties to inspect the same or, having examined it, in neglecting to give warning of its defective condition.    (*Pennsylvania Railroad Co. v. Snyder*, supra.)

One Pottinger, a competent railroad man with many years of experience, was a witness on behalf of the defendants below.    He testified that he was familiar with coal-cars like the one in question.    The following hypothetical question was propounded to him :

"Supposing that the end-gate was eighteen or twenty inches from the end of the car, leaving a platform eighteen or twenty inches on the outside of the end-gate ; the car was loaded with pipe, say six- or eight-inch gas- or water-pipe.    In simply passing over that car and in attempting to get upon a box car in front with a ladder upon the side of the box car, now you may state to the jury what would be the proper position or proper steps for an employee to take in order to get upon that box car in the event that the car was moving at the rate of about four miles an hour."

The court below sustained an objection to the question, and the witness was not permitted to answer. To pass safely from one moving freight-car to another, under the conditions presented by the facts before us, requires skill and a knowledge of the business of railroading beyond that possessed by the casual observer who has had no training in such vocation.    Certain methods derived from experience are known to those

engaged in the operation and management of railway cars and trains as customary, safe and practical in moving along and over freight-cars in motion, a disregard of which is fraught with danger, owing to the hazardous nature of the employment. The business may be classed as a technical one, requiring peculiar knowledge and training as a condition to its successful prosecution. The witness was not asked to give his conclusion as to whether or not Merrill was guilty of negligence in attempting to cross from one car to the other in the manner attempted. His opinion was sought regarding the proper position or proper step for an employee to take in order to reach the box car. We think the opinion of the expert was admissible. If the jury could have decided from the facts detailed the matter involved in the hypothetical question and arrived at a proper conclusion without the aid of expert testimony, then the position taken by the court below would have been right. It should be the aim of courts to assist the jury in arriving at the truth. The train was in motion, and the proper course to be taken by a switchman in going from one car to the other under such circumstances, considering the difference in height of the two cars and all the surroundings, was a matter fairly within the range of expert testimony. It cannot be said that the ordinary juror would not be assisted in making up his verdict by the aid of the testimony of the witness. Nor can we assume that the jury were as competent as the expert to draw a conclusion from the facts. Such testimony is excluded only in cases where the jury are considered equally competent with the witness to judge of the situation. (Law. Exp. and Opin. Ev. 86 ; Rog. Exp. Test. §§ 6, 7 ; *Cincinnati & Zanesville R. R. Co. v. Smith*, 22 Ohio St. 227 ; *Cooper v. The*

*Central Railroad of Iowa,* 44 Iowa, 134; *Seliger v. Bastian,* 66 Wis. 521, 29 N. W. 244; *Hayes v. Southern Pac. Co.* (Utah), 11 A. & E. R. C. 419, 53 Pac. 1001; *Bier v. Standard Mfg. Co.,* 130 Pa. St. 446, 18 Atl. 637; *Union Pac. Ry. Co. v. Novak,* 61 Fed! 573, 9 C. C. A. 629; *Olmscheid v. Nelson-Tenney Lumber Co.,* 66 Minn. 61, 68 N. W. 605; *Goins v. The Chicago, R. I. & P. Ry. Co.,* 47 Mo. App. 173; *F. W. & Denver City Ry. Co. v. Thompson,* 75 Tex. 501, 12 S. W. 742; *Leslie v. Granite Railroad,* 172 Mass. 468, 52 N. E. 542.)

In *Ferguson v. Hubbell,* 97 N. Y. 507, 513, the rule regarding the competency of such testimony was thus stated:

''It is not sufficient to warrant the introduction of expert evidence that the witness may know more of the subject of inquiry, and may better comprehend and appreciate it than the jury; but to warrant its introduction, the subject of the inquiry must be one relating to some trade, profession, science or art in which persons instructed therein, by study or experience, may be supposed to have more skill and knowledge than jurors of average intelligence may be presumed generally to have.''

The cases of *K. P. Rly. Co. v. Peavey,* 29 Kan. 169, and *S. K. Rly. Co. v. Robbins,* 43 id. 145, 23 Pac. 113, cited by defendant in error, do not cover the question involved here. In the one the plaintiff Peavy was asked whether, in his opinion, he would have been injured if the car had approached him at the usual and proper rate of speed for making couplings; and another witness testifying for him was asked to state whether brakemen, in making couplings, are not compelled to rely to a great extent upon the prudence of the person handling the engine. In the other a witness was interrogated as to the practice followed by other employees in ascending the ladder of a box

car.  This was held to create a collateral issue.  The admission of expert testimony was not involved in the latter case.

The following instruction given by the court to the jury seems to us to be misleading.  It reads :

" The burden of proof is upon the defendants to prove by a preponderance of the evidence that the plaintiff was careless and negligent, and that his carelessness and negligence directly contributed to the injury which he received, and if the evidence upon such matters, if any there be, is evenly balanced, or if it preponderates in favor of the plaintiff, then the defendant, failing to prove by a preponderance of the evidence that the plaintiff was guilty of contributory negligence, cannot defeat the claim of the plaintiff upon that ground."

This direction left the impression that unless the defendants below by their evidence established contributory negligence, the defense of such contributory negligence must fall.  If the testimony introduced on behalf of Merrill showed that the injury was the result of his own negligence, then there could be no recovery, even if the opposite party introduced no evidence upon that subject.  (*Dewald v. K. C. Ft. S. & G. Rld. Co.*, 44 Kan. 586, 24 Pac. 1101, and cases cited.)  We think this should have been made clear to the jury. (Beach, Cont. Neg. § 427, and cases cited ; *Gibson v. City of Wyandotte*, 20 Kan. 156, 158.)

The judgment of the court below will be reversed and a new trial is ordered.