M. A. DUNCAN, *Appellee*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant*.

No. 17,314.

SYLLABUS BY THE COURT.

1. PERSONAL INJURIES—*Negligence—Condition of Bridge—Evidence.* A bridge where a brakeman lost his life was so described and photographed that the jury could thoroughly understand its character and condition. Railway employees were permitted over objection to give their opinions as to such bridge being a safe place to work. *Held* error, as the jury could not from such opinions have received any assistance in arriving at a proper conclusion.

Duncan v. Railway Co.

2. ——— *Evidence — Opinions of Railway Employees — Competent.* Opinions of railway employees as to which side of a freight train it was proper for a brakeman to alight in order to give signals were properly received—this being a question calling for special knowledge or experience.

3. ——— *Printed Rules—Violation—Waived by Railway Company.* A printed rule of the railway company requiring brakemen to be on top of the train when approaching and passing stations was shown to have been habitually violated with knowledge of those whose duty it was to report such violations. *Held,* that the jury were justified in finding that such rule was waived by the company.

4. NEGLIGENCE—*Must be Proven.* The mere use on the cab of an engine of a stirrup of the kind used on box cars, instead of the standard step generally used on such engines, does not of itself show negligence as a matter of law. To render its use negligent such stirrup must in some way be shown to be unsafe.

5. ——— *Evidence — Circumstances — Inferences.* Where circumstances are relied on to show negligence they must be of such significance and relation one to another that a reasonable conclusion of negligence can be founded thereon, and while reasonable inferences may be drawn from the facts and conditions shown they can not be drawn from facts or conditions merely imagined or assumed.

Appeal from Sumner district court. Opinion filed December 9, 1911. Reversed.

*William R. Smith, O. J. Wood,* and *Alfred A. Scott,* for the appellant.

*Ed. T. Hackney,* for the appellee.

The opinion of the court was delivered by

WEST, J.: F. E. Duncan was an employee on defendant's road, was twenty-eight years of age, and earning $4 a day. On the night of March 9, 1908, he was head brakeman on a freight train coming east through the station of Noel, Okla., where on the south side of the track are an elevator and switch, and on the north side a switch stand, and about seventy-eight feet east

8—86 KAN.

of the latter a bridge about fifty-six feet in length over a ravine. On the north side this bridge was provided with a runway and hand rail, so that brakemen could cross in safety. On the south side there was neither hand rail nor runway, the end of the ties being but eighteen inches from the south rail of the track. The train was drawn by two engines, the second of which, No. 134, had on the north side the ordinary steps leading up to the gangway, but on the south side, instead of such steps, was one stirrup of metal about one and one-half inches wide, such as ordinarily used on freight cars. It was not shown how long the engine had been in this condition, nor whether Duncan had knowledge thereof at the time. On the night in question, at about eleven o'clock, it being moonlight with some clouds, as the train approached Noel, Duncan was standing in the gangway of the second engine with a lantern in his hand, receiving signals from the rear of the train and passing them to the engineer on the front engine, who controlled the air and the movement of the train. It was necessary to cut off the caboose and switch certain cars to the side track, and Duncan was receiving and passing signals given for this purpose. As the second engine was crossing the bridge in question, Duncan was seen by his engineer to be falling from the gangway, and was found under the bridge on the roadway beneath, unconscious and injured, from which injuries he died the next day. His widow sued to recover damages, alleging as negligence on the part of the company the defective condition of the engine with respect to the step on the south side, failure to have the south side of the bridge in question provided with a runway, and failure to keep a switch light burning, no evidence being introduced on the latter point. The answer was a general denial and allegation of contributory negligence and assumption of risk. At the close of the plaintiff's testimony a demurrer thereto was overruled, and after the close of the evidence the jury returned a verdict for the

Duncan v. Railway Co.

plaintiff and answered a large number of special questions, on which a judgment was moved for by the defendant and denied, a motion for a new trial being also refused. The jury found, among other things, that just prior to the injury Duncan was standing in the gangway of engine No. 134; that he fell out of the gangway; that he was found just after the injury on the south side of the bridge, which was fifteen feet from the ground; that on the north side of the bridge was a plank walk five feet from the outside of the rail, and a railing three feet high; that the step on the right side of the engine was similar to those used on box cars, with hand holds on each side in good condition; that Duncan had a lighted lantern in his hand, and had just given a signal to one of the train men; that the negligence of the defendant which caused his death was a defective step on engine No. 134 and lack of runway and hand rail on the south side of the bridge; that if the defendant had used reasonable care and precaution to prevent the fatal injuries to Duncan his death would not have occurred; that he had been over the bridge in question, while acting as fireman, twenty-eight times in the six or eight months prior to the accident, and had been over it within the forty-eight hours next prior thereto; that a printed rule of the company provided that freight brakemen must be on the top of their trains in approaching and on passing stations, and that if Duncan had been on top of his train he would not have been injured; that at the time the engineer was receiving signals from the conductor, through Duncan, that the train was moving about six miles an hour; that Duncan would have been injured if he had waited till the train stopped before getting off; that no one directed him to get off near the switch while the train was moving; that, aside from hurrying the work a little, the only advantage in getting off before the train stopped was to give signals; that Duncan intended to step down on the south side of the bridge at the time in question; that the movement

of the train crossing the bridge would make a distinct and noticeable rumble or sound to one paying heed thereto; that the evidence did not show that Duncan forgot where he was or took time and precaution to learn or to observe or examine as to location before getting off.

Testimony of various men who had worked for defendant showed that the printed rule requiring brakemen to be on top of a train when approaching a station was commonly unheeded and violated. Testimony of former employees was given to the effect that in their opinion the bridge in its condition was not a safe place to work. Testimony was also introduced showing that for the purpose of giving signals the south side of the engine was the proper one from which to alight. Defendant appeals and assigns as error the refusal of the trial court to sustain a demurrer to the evidence, its refusal to enter judgment on the findings, its denial of a motion for a new trial, and error in instructions and in ruling upon the introduction of evidence.

It is argued that there was a failure to show what actually caused the death of Duncan and that the conclusion that it was caused in the way found by the jury arises from mere speculation. Also, that Duncan was bound by the rule requiring him to be on top of the train, and that instead of being there he had voluntarily assumed a place of danger and thereby relieved the defendant of responsibility; that the opinion of the railroad men as to the safety of the bridge was improperly received, not being within the rule permitting expert evidence, and that the testimony showing the violation of the rule regarding the location of brakemen was improperly received and erroneously found by the jury to show a waiver by the company. Also, that there was no evidence that the step or stirrup was defective or that Duncan was in the line of his duty when the accident occurred.

It is argued that the court erred in charging that

disobedience of a reasonable rule requiring Duncan to be on top of the train would preclude his recovery if such disobedience caused or contributed to the injury, unless the jury also found that such rule was habitually disregarded, with the knowledge of those superior in authority whose duty it was to report such violations,. to such an extent as to show a tacit or express consent by the defendant to such disregard of such rule. Presumptively a rule of this kind is made for the purpose of being heeded, but when it is so continuously or habitually disregarded as to convince fair-minded jurors that it has been waived it is not only sense and justice that they may so conclude but it is the law. (*K. C. Ft. S. & G. Rld. Co. v. Kier,* 41 Kan. 661, 21 Pac. 770; *U. P. Rly. Co. v. Springsteen,* 41 Kan. 724, 21 Pac. 774.) In *Railroad Co. v. Slattery,* 57 Kan. 499, 46 Pac. 941, it was said by Justice Johnston:

"Ordinarily, the willful disobedience of a rule should be held to constitute negligence; but where the rule is habitually disregarded, and a different course has long been pursued by employees with the knowledge and approval of the managing officers of the company, the rule must be regarded as inoperative." (p. 505.)

It was held by the court of appeals of the seventh circuit, in *Cleveland, C., C. & St. L. Ry. Co. v. Baker,* 91 Fed. 224, 33 C. C. A. 468, that the habitual disregard of such rule with the knowledge of those whose duty it is to report violations thereof presents a question for the jury whether the rule has been waived by the company. This is substantially the same as the rule announced in the Springsteen case, *supra,* where an instruction quite similar to the one given in the case now under consideration was approved. Plaintiff asserts that as the defendant did not plead this rule it had no right to introduce evidence thereof. But as the answer appeared to be a general allegation of contributory negligence and assumption of risk, the plaintiff could have required the specific facts to be set forth by mo-

tion (*Price v. Water Co.*, 58 Kan. 551, 558, 50 Pac. 450), and not having made such motion, it was not error to permit the introduction of the testimony.

The defendant complains that evidence was received of the opinion of witnesses that the bridge was a dangerous place to work. These questions propounded to employees of the defendant, who were familiar with the bridge in question, called for their opinions as to whether it was a safe structure to couple and uncouple cars and to switch trains on the side track, or a safe structure for the brakeman and conductor to use in coupling and uncoupling and switching trains from that station from the east end of the switch. This was objected to as calling for an opinion of a witness who had not shown himself competent, and that it was a matter on which opinion evidence was not competent, the safety of the bridge being a question for the jury.

The alleged negligence of the company respecting the bridge was the failure to equip it with a runway on the south side, no mention being made of a hand rail on that side, and the testimony very clearly showed that the cab of engine No. 134 must have projected over the south end of the bridge and that there was neither runway nor hand rail on that side, and a photograph was introduced giving a very clear picture of the structure. In view of this condition of things the jury were as well able to say as anyone else whether the bridge was a safe place for train operatives to work, it being remembered that there was no complaint concerning such bridge except as to its south side. In *Murray v. Woodson County*, 58 Kan. 1, 48 Pac. 554, it was held proper to refuse to permit witnesses experienced in the building of bridges like the one there in question to describe its method of construction and claimed defects, and to give their opinion as to its safety. It was there said:

"Where all the facts from which an opinion can be formed as to the safety of travel on a public highway

are stated by those who have knowledge of them, and the matter is one within the comprehension of the jury upon explanation of such facts, it is the province of the jury to form such opinion, and not of witnesses, although experts, to express theirs." (p. 3.)

In *Erb v. Popritz*, 59 Kan. 264, 52 Pac. 871, certain witnesses without railroad experience had been permitted to give their opinion as to the cause of a certain derailment, and this was held error on the ground, not only that the witnesses had no expert knowledge, but that the appearance of the wreck could have been easily and adequately described to the jurors so that they could have formed an opinion as readily as the witnesses. Had the structure and situation been such that the witnesses by their railroad experience were able to afford the jury any assistance in addition to that furnished by an explanation of the facts and the photograph of the bridge it would have been proper to receive their opinions. (*Railway Co. v. Merrill*, 61 Kan. 671, 60 Pac. 819; *Railroad Co. v. Blaker*, 68 Kan. 244, 75 Pac. 71; *United States Smelting Co. v. Parry*, 166 Fed. 407, 92 C. C. A. 159; *Central Coal & Coke Co. v. Williams*, 173 Fed. 337, 97 C. C. A. 597; *Gila Valley R. R. Co. v. Lyon*, 203 U. S. 465.) It is impossible to see, however, why the jury were not entirely competent to judge as to the safety of the bridge or how they could in any wise have been assisted by the opinions of others. In addition to this, the questions were too broad, and if proper at all should have been restricted to the duties of a brakeman in giving signals and should not have included the duties of others in switching and uncoupling. It is suggested that the error, if any, was harmless, as the jury would have reached the same conclusion regardless of the opinions of others. But the matter presented by these opinions was not that the absence of a runway on the south side of the bridge made it dangerous for Duncan to assist in switching by giving signals, but was the broad proposition

that the bridge as a whole, for use by the train crew generally, was an unsafe place to work, and this might well have induced the jury to find the specific negligence claimed as one item embraced within the general negligence thus sought to be shown.

Complaint is also made that railroad men were permitted to testify as to which side the brakeman should get off in order to operate the train and give and receive proper signals. We see no reason why this was not competent, however, for jurors are not supposed to understand the proper method of operating railroad trains. (*Railway Co. v. Merrill,* 61 Kan. 671, 60 Pac. 819.)

Instruction No. 15 charged that the law did not require that Duncan should know of defects, if any existed, in the tracks, switches or engines, nor require him to make an inspection to ascertain if any such existed. In the same instruction the jury were told that if any such defects existed and were known to him it was his duty to exercise ordinary care to avoid injury and danger caused thereby, and this is criticised.

It was improper to include within this instruction tracks and switches, as the engine and bridge were the only alleged negligent matters about which evidence had been introduced; however, it is not seen that this expression could have in any wise prejudiced the jury or harmed the defendant.

The railway company insists that it devolved upon the plaintiff to show that the absence of a standard step on the south side of the engine or the absence of a platform on the south side of the bridge was the proximate cause of Duncan's death; that there was an utter failure of proof in this respect because the evidence did not show whether he attempted to use either step or platform, and even if it had so shown there was nothing to indicate that he looked before he leaped, and therefore the company could not be held responsible. Also that the evidence failed to show that Duncan had

any duty to perform upon the ground or upon the
bridge or in giving signals from the front of the train,
and that if he was performing the unnecessary act of
repeating signals he could have done that as well in the
gangway as on the bridge. It is also argued that no
statute or rule of law required any particular kind of
step on the engine and that the stirrup on the south
side of No. 134 was not shown to be defective in any
particular, the only complaint being that it differed in
design from the standard steps in general use on engine
cabs of defendant, such as were on the north side of the
engine in question. In her petition plaintiff alleged,
among other things, that the bridge had been con-
structed some twenty years, that the defendant well
knew the dangers attendant upon switching in a yard
with an open trestle, that Duncan either attempted to
step to the ground or take a position on the steps of
the engine and fell through the trestle or bridge, that
the engine in question had been injured prior to the ac-
cident by having its steps torn off on the south side,
which had been two in number with a curtain behind
to keep employees from slipping through, and that the
superintendent of repairs and the repairing force had
caused to be placed thereon the single iron step about
one and a half inches wide, about like the steps on
freight cars, without any protection at the back to
keep employees from slipping through; that the de-
fendant well knew such step was not safe but that it
was liable to cripple or kill employees while in dis-
charge of their duties. The only testimony regarding
the step showed that it was not the kind generally
used on such engines, that they usually have two steps,
that it was protected behind and on each side, that
there were the usual hand holds on both sides of engine
No. 134; that they were in their usual position and
firmly set; that the steps on both sides were solid, the
one on the north side being firm and solid and similar
to the ones on box cars. There was no evidence to show

whether Duncan attempted to alight by the use of the stirrup or whether he simply fell from the gangway, the only direct evidence being by his own engineer who said, "I seen him falling." Assuming for the moment that the jury rightfully inferred from the circumstances shown that the deceased attempted to alight by using what he supposed were standard steps and met his death because instead there was this stirrup, can it be said as a matter of law that the stirrup itself must be considered negligent equipment, or that the engine thus equipped must be considered as a matter of law an unsafe place for an employee to work regardless of whether he knew that such stirrup was there or not? It would seem that a brakeman used to similar stirrups on freight cars would not be endangered by one on an engine if he knew it was there. There is nothing to show, and we can not assume, that such a stirrup would be more dangerous on an engine cab than on a freight car or that it would be dangerous on either. In the absence of any testimony beyond the fact that such engines generally had steps instead of stirrups it would not be said that the defendant was shown to be guilty of negligence in this respect. In *Jackson v. K. C. L. & S. K. Rld. Co.*, 31 Kan. 761, 3 Pac. 501, it was alleged that the step of an engine was defective, causing an injury to the conductor. It was said:

"The step, however, was not really defective, but was simply of a different pattern from those often used on railroad engines; and the plaintiff admits in his brief that the evidence does not show such a defective or unsafe condition of the step as to preclude its use. And he also admits that, except for the reversal of the engine he would not have fallen or been injured. Besides, there was no necessity for the plaintiff to use the step at the time he did; and we certainly think that no negligence can be imputed to the railroad company on account of the use of said step by the plaintiff at the time he used it. Probably neither the plaintiff nor the

railroad company was guilty of negligence in using said step."   (p. 763.)

While the jury were warranted in drawing fair and reasonable inference from the facts and conditions shown, it was only from those shown and not from those imagined or inferred that such inference could rightfully be drawn.   They found that the negligence which caused the death was "defective step on engine No. 134 and lack of runway and hand rail on south side of bridge," and, also, that the train was moving about six miles an hour, and that Duncan would have been injured if he had waited until the train stopped before getting off.   Had he thus waited he would have been well beyond the bridge, which was 56 feet in length, and hence an injury at the point then reached could not have been caused by a defect in the bridge.   A mere accidental falling from the engine without fault of the company would not render it liable, and therefore in order to make the bridge a contributing cause of the injury it must appear otherwise than by speculation that the fall itself was attributable to the negligence of the company.   It is largely a case of circumstantial evidence in which the circumstances shown must be of such significance and relation one to another that a reasonable conclusion of negligence can be founded thereon.   In *Railway Co. v. Rhoades,* 64 Kan. 553, 68 Pac. 58, it was held that to establish a theory by circumstantial evidence the known facts relied on must be of such nature and so related to one another that the only reasonable conclusion to be drawn therefrom is the theory sought to be established.   In *Hart v. Railroad Co.,* 80 Kan. 699, 102 Pac. 1101, it was shown that a passenger fell from a vestibule train; the door of one vestibule was open but there was no testimony to show where or how it was opened, and it was argued that the presumption of negligence on the part of the company or of suicide on the part of the defendant were the

only ones to be indulged, and the latter being unreasonable the former alone remained. But it was held that no facts were presented upon which it could be safely assumed that the deceased lost his life because of any negligence upon the part of the defendant. In *Brown v. Railroad Co.*, 81 Kan. 701, 106 Pac. 1001, a passenger was found two or three hundred feet east of the depot lying close to the track, his dissevered legs between the rails and many bruises and wounds on his body. The ground indicated that the body had been dragged twenty-five or thirty feet. The train upon which he had been riding was a vestibule passenger train. It was held that the negligence of the company was not established, and it was said:

"The circumstances do not, however, indicate how the person happened to fall under the train or whose fault occasioned the fall, if it be the fault of anyone." (p. 705.)

In *Duncan v. Railway Co.*, 82 Kan. 230, 108 Pac. 101, a brakeman named Duncan was standing upon the stirrup of a freight car raising the lever which would uncouple the next car. The uncoupling had been made and the train had parted and Duncan was seen to roll out from under a car in the rear from the opposite side of the train. Blood was found upon the ties outside of the rail from the opposite side of the track where he had last been seen, and also upon one of the cars. The engineer testified that he saw him upon the stirrup, that he was leaning over into the car and giving signals to go forward. The brake beam of the car was found to be defective and in stepping upon it, for some reason not shown, it would sink down. The plaintiff claimed that the lever of the coupling device was disconnected and failed to work and for that reason the deceased had to lean over between the cars to lift the coupling pin, and in so doing his foot slipped on the defective brake beam which caused him to fall. The jury found that the ladder, hand hold and stirrup were in good

order but that the brake beam and coupling appliances were not in proper condition. The finding as to the coupling appliance was based entirely upon circumstances shown in evidence, direct testimony having been given that it was in good condition. In the opinion Mr. Justice Benson said:

"It is first presumed that the brakeman was doing his duties properly, which is a fair presumption; it is next presumed that he could not lift the pin by use of the lever; it is presumed from this that the appliance was out of order, and because of this defect it is presumed that he stepped upon the defective brake beam, thereby losing his life. . . . The lamentable death of this man may have been caused by some mischance after the uncoupling was effected. It may have been caused in the manner claimed by the plaintiff. Possibly one conjecture is as reasonable as another, but the evidence does not reveal the cause of his fall. In the absence of such evidence there can be no recovery." (pp. 232, 233.)

In view of the doctrine announced by these decisions we find it impossible to hold that the evidence justified the jury in all of their conclusions.

The judgment is reversed and the cause remanded with directions to grant a new trial.