No. 22,437.

HORTENSE PATTERSON, *Appellee*, v. UNCLE SAM OIL COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. NEGLIGENCE—*Sale of Coal Oil Mixed with Gasoline—Explosion of Lamp—Evidence Insufficient to Show Negligence.* Plaintiff was injured by the explosion of a coal-oil lamp, and sued the defendant, a wholesale dealer in gasoline and coal oil, alleging that defendant had carelessly mixed a large quantity of gasoline with coal oil and negligently sold and delivered some of the product as high-grade coal oil to the retail grocer from whom it was purchased, and that the mixture of gasoline caused the explosion which injured her. On the trial it was conceded that at defendant's place of business several thousand gallons of kerosene from a tank car had been, by mistake, loaded into a tank containing gasoline and that some of the contents was sold to the trade as gasoline. The principal issue of fact was whether any of this mixture was sold to the trade generally or to the retail grocer in question as coal oil. Upon an examination of the record it is *held* that there was no substantial evidence, direct or circumstantial, tending to prove that fact, and therefore plaintiff failed to prove her cause of action.

2. SAME—*Incompetent Evidence to Show Negligence Alleged.* Over defendant's objections plaintiff was permitted to prove that shortly after the accidental mixture of gasoline and coal oil at defendant's plant other persons purchased high-grade gasoline from the defendant which contained large quantities of coal oil. *Held*, that the testimony was not admissible, for the reason that evidence of defendant's negligence in selling for coal oil a mixture containing gasoline could not be established by proof that it was negligent in the sale of gasoline.

Appeal from Sedgwick district court, division No. 1; RICHARD E. BIRD, judge. Opinion filed July 10, 1920. Reversed.

*J. N. Haymaker, A. V. Roberts,* both of Wichita, and *R. S. Brennan,* of Kansas City, Mo., for the appellant.

*John W. Adams,* and *William Keith,* both of Wichita, for the appellee.

The opinion of the court was delivered by

PORTER, J.: On the 26th of December, 1913, Hortense Patterson was seriously injured by the explosion of a coal-oil lamp. On April 24, 1915, she brought this action against the Uncle Sam Oil Company to recover damages for her injuries, alleging that the defendant was engaged in the wholesale and retail gasoline and coal-oil business in the city of Wichita and kept large quantities of coal oil and gasoline in storage tanks for that purpose; that sometime prior to plaintiff's accident the defendant, through its agents and servants, mixed and mingled a large quantity of gasoline with a large quantity of coal oil, and negligently and carelessly delivered and sold to one J. H. Missildine, a retail grocer, large quantities of the mixture, knowing that he would sell and retail the same to his customers as coal oil for use in lamps for lighting purposes; that the mixture was sold to him as pure, high-grade coal oil, and that the plaintiff's husband purchased some of the mixture from him as coal oil, and that the large content of gasoline therein caused the explosion which injured the plaintiff. There was a verdict and judgment in plaintiff's favor for $3,000, from which the defendant appeals.

It is insisted that the petition does not state a cause of action, since it is not brought under any statute, because there is no common-law action in Kansas for injuries sustained through the explosion of coal oil sold for illuminating purposes; and that a recovery for such injuries can only be had under the Kansas statute, section 5023 of the General Statutes of 1915, which declares that:

"Whoever shall sell any fluids without inspection as provided for in this act shall be liable to any person purchasing any of said oils or fluids,

or any person injured thereby, for any damages to persons or property arising from the explosion thereof."

The defendant relies upon the case of *Oil Co. v. Rankin*, 68 Kan. 679, 75 Pac. 1013, the syllabus of which reads:

"In the absence of an express warranty, fraud, or deceit, the rule of *caveat emptor* applies where a dealer sells goods on the market for retail.

"Chapter 72a, General Statutes of 1901, makes no provision for the recovery of damages to person or property resulting from the explosion of illuminating oil except where such oil is sold without having been inspected and tested." (¶¶ 1, 2.)

In that case the petition set up two causes of action: the first, under the statute for damages for selling illuminating oil without having it tested; the second, a common-law action charging the defendant with having manufactured for illuminating purposes oil which, because of its liability to explode, was dangerous. In both causes of action it was alleged that the oil was sold by the defendant to a retail grocer who sold it to the plaintiff. The evidence showed that the defendant was a dealer in oil and sold to the retail trade. It was held that the demurrer to the second cause of action should have been sustained. In the opinion it was said:

"Our statute, unlike the statutes of many states, does not give a right of action against the seller of oil for damages sustained by an explosion except where the oil was sold without having been tested. It gives that right, however, if the oil has not been tested, regardless of what its actual test may be. The purpose of the act is to require all oils to be tested before being put on the market; in all its provisions that one idea predominates." (p. 681.)

In the present case the jury made a finding that the oil had not been tested. The finding is unsupported by any evidence. The only evidence upon the subject was offered by the defendant and showed affirmatively that the oil had been tested. The court refused to set aside the finding. The defendant concedes that the jury were not bound to believe the testimony offered by it to show that there had been an inspection, but with much reason insists that the jury could not, in the absence of any testimony that there had been no inspection, make a finding that there had been none.

Evidence offered by both plaintiff and defendant established the fact that at the defendant's place of business in Wichita there were six or eight oil tanks, including fuel-oil tanks, gaso-

line tanks, and coal-oil tanks, which were filled as occasion required from tank cars, and that in the latter part of November, 1913, there was an accidental mixture of some of defendant's coal oil and gasoline. The mistake arose by misunderstanding a telephone message from the railway agent at Wichita notifying defendant that a tank of oil had arrived. The employee who received the message understood the agent to say, "We have a car of gasoline for you." When the tank car filled with coal oil arrived at the plant about 4,000 gallons of the contents were pumped into one of the gasoline tanks, which held about 10,000 gallons and which already contained several thousand gallons of gasoline. The mistake was then discovered. The evidence showed, however, that none of the mixture was run into the coal-oil tank from which wagons were filled for trade in Wichita; that the mixture was allowed to stand in the gasoline tank until the next day, when the coal oil had settled to the bottom, and part of the contents was run off into a reserve tank and into barrels and shipped back to Cherryvale for treatment. What remained after having been tested was sold in Wichita as gasoline.

In an attempt to show that some of this mixture got into the general trade at Wichita, the plaintiff produced the testimony of two witnesses; one, the proprietor of a cleaning establishment, who, over the objections of the defendant, was permitted to testify that in December, 1913, he ordered high-grade gasoline from the defendant for use in his dry-cleaning establishment, and when it was used it left a coal-oil odor in the garments which could not be removed, and he was obliged to pay customers for injuries to the garments; that he had tested the gasoline so purchased from the defendant, and that it contained a large quantity of coal oil. He had never bought any coal oil from the defendant. Over the objections of the defendant the witness was permitted to testify that he brought an action against defendant and recovered damages for the loss occasioned by coal oil being mixed with the gasoline.

Another witness testified that he was conducting a garage in Wichita and during the month of December purchased gasoline from the defendant which contained kerosene or coal oil; that he complained of the quality of the gasoline and the defendant immediately replaced it with a high grade of gasoline to which

he had no objection; that he had purchased coal oil from the defendant and had found it all right.  All of this testimony was objected to on the ground that evidence of these transactions had no tendency to establish the fact that any of the mixture caused by the accident at the defendant's plant was sold as coal oil, and that they had no connection whatever with the transaction between the defendant and the grocer Missildine.  It was further objected to on the ground that it confused the issues and was not admissible, because evidence of defendant's want of care could not be established by proving its negligence at other times or that it was generally careless.  (*S. K. R!y. Co. v. Robbins,* 43 Kan. 145, 23 Pac. 113; *Roberts v. Dixon,* 50 Kan. 436, 31 Pac. 1083; *C: K. & W. Rld. Co. v. Hoffman,* 50 Kan. 697, 32 Pac. 382; *Railway Co. v. Morris,* 64 Kan. 411, 67 Pac. 837.)  Numerous additional authorities are cited on the proposition that particular acts of negligence cannot be admitted to prove the negligence in question.

Mr. Wade, who was the superintendent in charge of the defendant's plant at Wichita and who discovered that the employees had made a mistake and were filling a gasoline tank with kerosene, testified that they drew off all except a little that was left in the tank, and a thorough test was made of what remained after it had settled; that it was sold to garages and the gasoline trade in Wichita, and that the rest, including that first drawn into the reserve tank and into barrels, was shipped back to Cherryvale.  He testified that he personally superintended the disposition of this mixture; that it was sold as gasoline, and before any of it was sold or delivered he personally tested it.  His testimony is that sales and deliveries of coal oil were under his direct supervision; he identified the delivery tickets showing two sales of coal oil to grocer Missildine, one of twenty gallons on December 15, and one of thirty gallons on December 22, just previous to plaintiff's accident; he testified that he was present and knew the tank wagons were loaded with the coal oil shown by the exhibits.  The court sustained a motion to strike out the latter part of his testimony, possibly on the theory that something might have happened to the coal oil after it left the defendant's place and before it was emptied into the tank at the Missildine grocery.  The witness

had explained the different method used in loading tank wagons with gasoline and with coal oil. The storage tank for coal oil was mounted on piers, and the wagons were loaded from it by gravity. When the gasoline tank wagons were loaded the gasoline was pumped from a tank lying on the ground into a graduating tank in order to ascertain the grade of the gasoline; from this tank it was then loaded into the wagons by gravity. On cross-examination Mr. Wade testified that in December, 1913, the product that remained in the tank after the mistake occurred, had been sold and distributed over the city of Wichita as gasoline, and that some of it was sold to Jackson, the dry cleaner, some of it went to the Hughes garage, and that some of it might have gone to Missildine as gasoline.

Manifestly it was error to strike out the testimony of the witness Wade. It concerned the most important issue in the case—the character and quality of the most recent sales of coal oil to Missildine, the retail dealer, just previous to the purchase made by the plaintiff's husband of the mixture which, it is claimed, caused her injuries. It was, at least, evidence tending to show the quality of the mixture at the time it was sold and sent out for delivery. The witness did not attempt to testify as to what might have happened to the mixture after the wagons left the defendant's place of business.

We think, too, that it was error to admit evidence as to the sales of gasoline to Jackson and Hughes. The plaintiff does not claim to have purchased gasoline; and the fact that defendant had sold to other persons or to the public generally, as high-grade gasoline, a product which contained coal oil, or that damages had been recovered in an action against it for such sales, was not competent evidence to establish a particular sale, as high-grade coal oil, of a product mixed with gasoline. The testimony merely served to confuse the jury as to the real issue of fact involved. The error was highly prejudicial, because it was upon this character of testimony alone that plaintiff was forced to rely in order to establish by mere inference that the defendant had sold, as coal oil, a product mixed with gasoline.

The importance of this character of proof to the plaintiff's case is apparent from the contentions presented in the brief, where it is insisted that the evidence shows that this mixture

of gasoline and kerosene was sold to the retail trade of Wichita through the month of December, and that the evidence of Jackson and Hughes was admissible for the purpose of showing that defendant had mixed its gasoline and coal oil. It is said in the brief that:

"This evidence was admissible for the purpose of showing that the defendants had mixed their gasoline and coal oil; for the purpose of showing knowledge and notice and for the purpose of showing the intention of defendants to sell this mixture to the trade generally. . . . The defendants' own witness [Wade] testified that this mixture was sold all during the month of December in the city of Wichita. . . . It was merely evidence of selling the same mixture here complained of, and as such was clearly admissible. . . . The gasoline was sold to the trade, and the coal-oil mixture was sold to the trade."

But the witness, Wade, testified that none of the mixture went into the coal-oil storage tank; that some of it might have gone to Missildine as gasoline; that if he bought any, he bought it as gasoline.

Referring to the testimony of the witnesses Jackson and Hughes, it is said in plaintiff's brief:

"The evidence of these witnesses was merely cumulative of the fact that a mixing of this coal oil and gasoline had taken place. The time of the sales and mixing all corresponded. The witnesses all testified that the time was the same and the evidence all shows that it was but one act of mixing. The fact that a mixture was sold to others shows the purpose of the defendants and the intention of the defendants to sell this mixture to their customers. It also shows notice to and knowledge of the defendant of the dangerous character of the mixture."

Entirely independent of the errors in the admission of testimony, it is the opinion of the majority of the court that plaintiff's case must fail because of a lack of evidence upon the vital question involved. It was only by mere conjecture and speculation that the jury could find that any of the mixture at defendant's plant was sold or delivered to Missildine, the grocer, as coal oil. In *Duncan v. Railway Co.*, 86 Kan. 112, 119 Pac. 356, it was said:

"While the jury were warranted in drawing fair and reasonable inference from the facts and conditions shown, it was only from those shown and not from those imagined or inferred that such inference could rightfully be drawn." (p. 123.)

(See, also, another case with same title, *Duncan v. Railway Co.*, 82 Kan. 230, 108 Pac. 101, and cases cited in the opinion.)

In *Railway Co. v. Rhoades,* 64 Kan. 553, 68 Pac. 58, it was ruled in the syllabus:

"So to establish a theory by circumstantial evidence that it may be accepted as a fact proved, the known facts relied on as a basis for the theory must be of such nature and so related to one another that the only reasonable conclusion that may be drawn therefrom is the theory sought to be established.

"The term, 'a presumption of fact,' has reference to a fact whose existence is established by that just and reasonable inference which common sense and experience naturally draw from another fact known to exist. It must have a fixed fact for its foundation. It cannot be based upon a presumption." (¶¶ 1, 2.)

(To the same general effect, see *Hart v. Railroad Co.,* 80 Kan. 699, 102 Pac. 1101; *Brown v. Railroad Co.,* 81 Kan. 701, 106 Pac. 1001.)

In *Duncan v. Railway Co.,* 82 Kan. 230, 108 Pac. 101, Judge Benson, speaking for the court, said:

"The real question must always be whether there is substantial evidence, direct or circumstantial, fairly tending to prove the fact in issue. Presumptions, as understood in the law of evidence, must have substantial probative force as distinguished from surmise. If a fact may be established by inference from the presumption of another fact, it should at least be a logical deduction and reasonably certain in the light of all other proper presumptions and of all collateral facts. The chain of presumptions ought not to be extended into the region of conjecture. (*Diel v. Mo. Pac. Ry. Co.,* 37 Mo. App. 454.) A fact is not proved by circumstances which are merely consistent with its existence. (*Carruthers v. C. R. I. & P. Rly. Co ,* 55 Kan. 600.)" (p. 233.)

The theory of plaintiff's case, as set out in her petition and at the trial, was that there had been an accidental mixture of coal oil and gasoline at the defendant's plant in Wichita and that defendant, knowing this, negligently sold and delivered to Missildine as coal oil a part of this mixture containing quantities of gasoline which exploded and caused her injuries. That there was an accidental mixture of coal oil and gasoline at defendant's plant a few weeks before is conceded, but the burden rested on the plaintiff to establish that some of this mixture was sold and delivered to Missildine for coal oil. That was the principal issue of fact involved at the trial. It must be held that there was no substantial evidence, direct or circumstantial, tending to prove that fact. It follows that the judgment must be reversed and the cause remanded with directions to render judgment for the defendant.

PORTER, J. (concurring specially) :   I concur in the judg-
ment of reversal on the ground of failure of proof, but in my
opinion the doctrine of the Rankin case is controlling, and the
allegations of the petition, as well as the proof, being that the
defendant was a dealer in oils and sold without any express
warranty to the retail dealer, no cause of action was stated or
proved.