No. 34,832

Dora I. Williams et al., *Appellees*, v. The Gulf Oil Corporation et al., *Appellants*.

(107 P. 2d 680)

Opinion filed December 7, 1940.

*Ed T. Hackney*, of Wellington, *James B. Diggs, William C. Liedtke, Russell G. Lowe, Redmond S. Cole, C. L. Billings* and *James B. Diggs, Jr.*, all of Tulsa, Okla., for the appellants.

*Joe T. Rogers, Ralph Gilchrist* and *Roy L. Rogers*, all of Wichita, for the appellees.

The opinion of the court was delivered by

Wedell, J.: This action was brought to recover permanent damages to a farm in Sumner county. The damage was alleged to have resulted from pollution of a creek due to the failure of defendants to confine salt water, oil and oil refuse from the Williams No. 1 well, located on the oil and gas lease. The action was brought by Dora I. Williams and her children, owners of the land. It appears the lease was executed to the defendant, the Gypsy Oil Company, and that the defendant, the Gulf Oil Company, later purchased the lease together with all other property owned by the Gypsy Oil Company. Plaintiffs prevailed, and the defendant oil companies appeal.

Defendants contend: (1) There was a complete failure of proof of any causal connection between the alleged pollution of the creek and the Williams No. 1 well; (2) plaintiffs released defendants from

all damages arising from or connected with the operation of the lease prior to or after the date of release; (3) no actual damage or loss was sustained; (4) the verdict was clearly the result of passion and prejudice; (5) recovery, if such right ever existed, is barred.

The date of the original lease is not disclosed. The Williams No. 1 well produced oil for approximately one year or until August 1, 1931. Numerous other wells were drilled in this same area. The Williams No. 1 well was drilled to a depth of approximately 5,076 feet. It was located approximately 800 or 900 feet southwest of the point where seepage was found in the creek. The point at which the well was drilled was approximately 65 to 75 feet higher than the creek. The Gypsy drilled the Enderud well, which was one location away and directly to the west of the Williams No. 1 well. After the Enderud No. 1 well was drilled the Williams No. 1 well ceased producing. The casing was then pulled from the latter well, and the well was abandoned August 1, 1931. The Williams No. 2 well had been drilled at a point two locations north of the Williams No. 1, and within approximately fifty feet south of the creek. It resulted in a dry hole. The seepage into the creek was a short distance to the southeast of that hole. The exact distance was not fixed. Testimony on behalf of plaintiffs disclosed the pollution was first observed in the spring of 1937. The instant action was filed May 25, 1938.

Testimony of defendants disclosed the Williams No. 1 well was securely and lawfully plugged April 9, 1932, and in accordance with the latest and best methods known to the industry. Plaintiffs offered no evidence to show it was not so plugged. There was much testimony offered by witnesses for defendants which disclosed the dip of the shale and rock bed from the Williams No. 1 well was to the southwest to the extent of approximately sixty feet per mile. Expert witnesses for defendants testified that in their opinion the seepage could not have come from the Williams No. 1 well. Plaintiffs' evidence disclosed there were two natural draws from the point of seepage into the creek toward well No. 1, but neither of the draws reached to well No. 1. One of the draws was inconsequential in depth and length. The larger draw became shallower as it approached well No. 1, and disappeared entirely before it reached the surface of the ground at that well. Defendants' evidence disclosed there were no draws which could have been responsible for drainage from the well if drainage in fact existed. There was some evidence

that oil had been seen at some time in the larger draw where it entered the bank of the creek. That there was seepage of oil into the creek is not disputed. The question was whether that oil or oil refuse came from the Williams No. 1 well. There was no evidence that seepage had ever been found in the larger draw anywhere near the Williams No. 1 well. Plaintiffs limited the source of pollution to that well. Plaintiffs' case rested exclusively upon circumstantial evidence. Plaintiffs did not show the drainage did not, or reasonably could not, have some other source in this area. That is, they did not attempt to establish such proof by evidence which was other than highly speculative and conjectural and they did not, in the first place, establish a causal connection between the seepage and the Williams No. 1 well. Plaintiffs insist that in determining the sufficiency of proof we are to consider only evidence which supports the findings and verdict. That is, of course, true, but that evidence fails to establish the causal connection required. In a recent salt-water pollution case not yet reported when briefs were filed in the instant case, we held:

"Circumstantial evidence, in a civil case, need not rise to that degree of dignity which will exclude every reasonable conclusion other than that reached by the jury.

"When evidence establishes facts from which it reasonably may be inferred defendants polluted a stream on plaintiffs' land, plaintiffs are not obliged to prove that others, or another, did not contribute to the pollution." (Syl. ¶¶ 3, 4.) (*Donley v. Amerada Petroleum Corp.,* 152 Kan. 518, 106 P. 2d 652.)

The abstract of the defendants contains 110 pages. Plaintiffs' brief contains numerous statements of fact and inferences in support of their contention that the source of pollution was the Williams No. 1 well. Not one single reference is made to any page of the voluminous abstract to support the statements or inferences drawn therefrom as required by rule 6 (1) of this court. No counter abstract is furnished to support the alleged facts or inferences.

Plaintiffs, nevertheless, contend the evidence was sufficient to sustain the verdict and cite *Gilmore v. Salt Co.,* 84 Kan. 729, 115 Pac. 541; *Helms v. Oil Co.,* 102 Kan. 164, 169 Pac. 208; *Hall v. Galey,* 126 Kan. 699, 271 Pac. 319; *Martin v. Shell Petroleum Corp.,* 133 Kan. 124, 299 Pac. 261; *Berry v. Shell Petroleum Co.,* 140 Kan. 94, 33 P. 2d 953. Analysis of those cases will disclose facts, although not strong in all of them, far more convincing than those contained in the instant case. It is true it was the jury that was to be convinced and that it found the pollution was caused by the Williams

No. 1 well. That fact, however, does not relieve this court of its duty to ascertain whether the finding was based upon substantial evidence. A review of the record discloses the finding was based upon mere conjecture and speculation. Judgments based upon such evidence or findings are not permitted to stand. (*Railroad Co. v. Aderhold*, 58 Kan. 293, 298, 49 Pac. 83; *Maxwell v. Coffeyville Mining & Gas Co.*, 68 Kan. 821, 822, 75 Pac. 1047; *Duncan v. Railway Co.*, 86 Kan. 112, 119 Pac. 356; *Patterson v. Oil Co.*, 107 Kan. 221, 191 Pac. 258; *Beeler v. Railway Co.*, 107 Kan. 522, 192 Pac. 741; *Fair v. Golden Rule Refining Co.*, 134 Kan. 623, 7 P. 2d 70; *Corr v. Continental Oil Co.*, 145 Kan. 78, 64 P. 2d 30; on rehearing, 147 Kan. 1, 75 P. 2d 212; *Hogan v. Santa Fe Trail Transportation Co.*, 148 Kan. 720, 727, 85 P. 2d 28.)

In the Duncan case, *supra*, the principle applicable to the instant case was clearly stated. It will bear repetition. It reads:

"While the jury were warranted in drawing fair and reasonable inference from the facts and conditions shown, it was only from those shown and not from those imagined or inferred that such inference could rightfully be drawn." (p. 123.)

In the case at bar the judgment cannot stand for the reason indicated. It may also be said, in the opinion of a majority of the court, at least one other defense urged would require a reversal of the judgment. The cause is remanded with directions to enter judgment for defendants.